FILED
2009 Jun-29  AM 11:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

| State of Alabama<br>Unified Judicial System<br><br>Form C-34       Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br><br>C 200901589 |
|---|---|---|

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __LOUISIANA MUNICIPAL POLICE__   **v.  Defendant** _____ C. DOWD RITTER, et al. _____
_____ EMPLOYEES RETIREMENT SYSTEM _____

**NOTICE TO** _____ C. DOWD RITTER, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓]   Service by certified mail of this summons is initiated upon the written request of __Plaintiff's attorney__ pursuant to the Alabama Rules of Civil Procedure.

Date _____ MAY 2 2 2009 _____          _Anne Marie Adams_  By: _____

_____
Clerk/Register

[✓]  Certified Mail is hereby requested.

FILED IN OFFICE

MAY 2 2 2009

ANNE-MARIE ADAMS
Clerk

_____
Plaintiff's/Attorney's Signature

**RETURN ON SERVICE:**

[ ]  Return receipt of certified mail received in this office on _____.
                                                                                                          (Date)

[ ]  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
                                    (Date)

_____          _____
Date                                                         Server's Signature

_____          _____
Type of Process Server                              Address of Server

                                                             _____

                                                             _____
                                                             Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | Case Number<br><br>C 2 0 0 9 0 1 5 8 8 |
|---|---|---|

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __ LOUISIANA MUNICIPAL POLICE __ **v.** **Defendant** _____ C. DOWD RITTER, et al. _____
_____ EMPLOYEES RETIREMENT SYSTEM _____

**NOTICE TO** _____ JACKSON W. MOORE, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of _Plaintiff's attorney_ pursuant to the Alabama Rules of Civil Procedure.

Date _____ **MAY 2 2 2009** _____          *Anne-Marie Adams*          By: _____
                                            Clerk/Register

[✓] Certified Mail is hereby requested.

Plaintiff's/Attorney's Signature

**FILED IN OFFICE**

**MAY 2 2 2009**

**ANNE-MARIE ADAMS**
**Clerk**

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                                (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
              (Date)

_____                    _____
Date                             Server's Signature

_____                    _____
Type of Process Server           Address of Server

                                 _____

                                 _____
                                 Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br><br>C 200901588 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** _LOUISIANA MUNICIPAL POLICE_   **v.** **Defendant** _____ C. DOWD RITTER, et al. _____
_EMPLOYEES RETIREMENT SYSTEM_ _____

**NOTICE TO** _____ IRENE ESTEVES, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☑   Service by certified mail of this summons is initiated upon the written request of _ Plaintiff's attorney _ pursuant to the Alabama Rules of Civil Procedure.

Date __MAY 2 2 2009__       _Anne-Marie Adams_ By: _____
                                        Clerk/Register

☑  Certified Mail is hereby requested.
                                        Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐   Return receipt of certified mail received in this office on _____ .
                                                                      (Date)
☐   I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
                    (Date)

| | |
|---|---|
| _____ | _____ |
| Date | Server's Signature |
| _____ | _____ |
| Type of Process Server | Address of Server |
| | _____ |
| | _____ |
| | Phone Number of Server |

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br><br>C 2009 0158 8 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** _LOUISIANA MUNICIPAL POLICE_ **v.** **Defendant** _C. DOWD RITTER, et al._
_____ EMPLOYEES RETIREMENT SYSTEM _____ _____

**NOTICE TO** _____ ALTON E. YOTHER, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of _Plaintiff's attorney_ pursuant to the Alabama Rules of Civil Procedure.

Date ___MAY 2 2 2009___                     _Anne-Marie Adams_ By: _____
                                            Clerk/Register

                                                               FILED IN OFFICE

[✓] Certified Mail is hereby requested.                        MAY 2 2 2009
                                            Plaintiff's/Attorney's Signature   ANNE-MARIE ADAMS
                                                                                  Clerk

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                                      (Date)
[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
                (Date)

_____                          _____
Date                                       Server's Signature

_____                          _____
Type of Process Server                     Address of Server

                                           _____

                                           _____
                                           Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34       Rev 6/88 | **SUMMONS<br>-CIVIL-** | **Case Number**<br><br>C 2 2009 0 1 5 8 8 |
| --- | --- | --- |

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __LOUISIANA MUNICIPAL POLICE__ **v.** **Defendant** ____C. DOWD RITTER, et al.____
_____EMPLOYEES RETIREMENT SYSTEM_____

**NOTICE TO** _____ D. BRYAN JORDAN, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____GREGORY L. DAVIS_____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ____30____ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓]   Service by certified mail of this summons is initiated upon the written request of ___Plaintiff's attorney___ pursuant to the Alabama Rules of Civil Procedure.

Date ____MAY 2 2 2009____          *Anne-Marie Adams*   By: _____
                                    Clerk/Register

[✓]   Certified Mail is hereby requested.          *(signature)*

                                    Plaintiff's/Attorney's Signature

FILED IN OFFICE
MAY 2 2 2009
ANNE-MARIE ADAMS
Clerk

RETURN ON SERVICE:

[ ]   Return receipt of certified mail received in this office on _____.
                                                              (Date)

[ ]   I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
            (Date)

_____          _____
Date                              Server's Signature

_____          _____
Type of Process Server            Address of Server

                                  _____

                                  _____
                                  Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34     Rev 6/88 | **SUMMONS<br>-CIVIL-** | Case Number<br><br>C 200901588 |
|---|---|---|

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __LOUISIANA MUNICIPAL POLICE__ **v. Defendant** _____ C. DOWD RITTER, et al. _____
_____EMPLOYEES RETIREMENT SYSTEM_____          _____

**NOTICE TO** _____ RONALD C. JACKSON, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓]   Service by certified mail of this summons is initiated upon the written request of __Plaintiff's attorney__ pursuant to the Alabama Rules of Civil Procedure.

Date __MAY 2 2 2009__          *Anne-Marie Adams*   By: _____
                              Clerk/Register

                                               **FILED IN OFFICE**

[✓]  Certified Mail is hereby requested.                MAY 2 2 2009

                              Plaintiff's/Attorney's Signature   **ANNE-MARIE ADAMS**
                                                                      **Clerk**

RETURN ON SERVICE:

[ ]   Return receipt of certified mail received in this office on _____.
                                                                    (Date)
[ ]   I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
                    (Date)

_____                    _____
Date                                    Server's Signature

_____                    _____
Type of Process Server                  Address of Server

                                        _____

                                        _____
                                        Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS<br>-CIVIL-** | **Case Number**<br>C 200901589 |
| --- | --- | --- |

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** LOUISIANA MUNICIPAL POLICE _____ **v.** **Defendant** _____ C. DOWD RITTER, et al. _____
_____ EMPLOYEES RETIREMENT SYSTEM _____

**NOTICE TO** _____ RICHARD D. HORSLEY, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL 35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of _____ Plaintiff's attorney _____ pursuant to the Alabama Rules of Civil Procedure.

Date   MAY 2 2 2009 _____                    By: _____
                                          _Clerk/Register_

[✓] Certified Mail is hereby requested.

_____
_Plaintiff's/Attorney's Signature_

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____ .
                                                                                   (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
                  (Date)

_____              _____
Date                                  Server's Signature

_____              _____
Type of Process Server                Address of Server

                                      _____

                                      _____
                                      Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS<br>-CIVIL-** | Case Number<br><br>C 200901588 |
| --- | --- | --- |

IN THE _____CIRCUIT_____ **COURT OF** _____JEFFERSON_____ **COUNTY**

Plaintiff  LOUISIANA MUNICIPAL POLICE   **v.** **Defendant** _____C. DOWD RITTER, et al._____
_____EMPLOYEES RETIREMENT SYSTEM_____

**NOTICE TO** _____ALLEN B. MORGAN, JR., c/o Regions Financial Corporation_____
_____1900 Fifth Avenue North, Birmingham, AL  35203_____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____GREGORY L. DAVIS_____ WHOSE ADDRESS IS _____6987 Halcyon Park Drive_____
_____Montgomery, AL  36117_____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓]   Service by certified mail of this summons is initiated upon the written request of  _Plaintiff's attorney_ pursuant to the Alabama Rules of Civil Procedure.

Date _____MAY 2 2 2009_____          *Anne-Marie Adams*          By: _____

                                             Clerk/Register                    **FILED IN OFFICE**

[✓]  Certified Mail is hereby requested.                                **MAY 2 2 2009**

                                   Plaintiff's/Attorney's Signature  **ANNE-MARIE ADAMS**
                                                                              **Clerk**

RETURN ON SERVICE:

[ ]  Return receipt of certified mail received in this office on _____.
                                                                                      (Date)

[ ]  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
                        (Date)

Date _____          Server's Signature _____

Type of Process Server _____          Address of Server _____

                                                                      _____

                                                                      Phone Number of Server

| State of Alabama Unified Judicial System | **SUMMONS** **-CIVIL-** | Case Number |
|---|---|---|
| Form C-34    Rev 6/88 | | C 2 0 0 9 0 1 5 8 8 |

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** _LOUISIANA MUNICIPAL POLICE_ **v. Defendant** ____ C. DOWD RITTER, et al. ____
_____ EMPLOYEES RETIREMENT SYSTEM _____ _____

**NOTICE TO** _____ SAMUEL W. BARTHOLOMEW, JR., c/o Regions Financial Corporation
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓]  Service by certified mail of this summons is initiated upon the written request of _Plaintiff's attorney_ pursuant to the Alabama Rules of Civil Procedure.

Date _MAY 2 2 2009_ _____ _Anne-Marie Adams_ _____ By: _____
_____ Clerk/Register

[✓]  Certified Mail is hereby requested.          **FILED IN OFFICE**

_____ MAY 2 2 2009
Plaintiff's/Attorney's Signature

**ANNE-MARIE ADAMS**
**Clerk**

RETURN ON SERVICE:

[ ]  Return receipt of certified mail received in this office on _____.
                                                                    (Date)
[ ]  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
                (Date)

_____          _____
Date                                   Server's Signature

_____          _____
Type of Process Server                 Address of Server

                                       _____

                                       _____
                                       Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS<br>-CIVIL-** | **Case Number** |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** LOUISIANA MUNICIPAL POLICE   **v.  Defendant** _____ C. DOWD RITTER, et al. _____
EMPLOYEES RETIREMENT SYSTEM

**NOTICE TO** _____ GEORGE W. BRYAN, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF
YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH
THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR
YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE
ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND
COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR
THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the
defendant.

[✓]   Service by certified mail of this summons is initiated upon the written request of _ Plaintiff's attorney _
pursuant to the Alabama Rules of Civil Procedure.

Date   MAY 2 2 2009 _____        _Anne Marie Adams_ By: _____
                                          Clerk/Register

                                                              FILED IN OFFICE

[✓]   Certified Mail is hereby requested.        _[signature]_        MAY 2 2 2009
                                          Plaintiff's/Attorney's Signature
                                                              ANNE-MARIE ADAMS
                                                                   Clerk

**RETURN ON SERVICE:**

[ ]   Return receipt of certified mail received in this office on _____ .
                                                              (Date)
[ ]   I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
              (Date)

_____        _____
Date        Server's Signature

_____        _____
Type of Process Server        Address of Server

                                          _____

                                          _____
                                          Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br><br>C█200901589 |
|---|---|---|

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __LOUISIANA MUNICIPAL POLICE__ **v. Defendant** ____C. DOWD RITTER, et al.____
_____EMPLOYEES RETIREMENT SYSTEM_____ _____

**NOTICE TO** _____ MARGARET H. GREENE, c/o Regions Financial Corporation _____
_____1900 Fifth Avenue North, Birmingham, AL 35203_____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____GREGORY L. DAVIS_____ WHOSE ADDRESS IS _____6987 Halcyon Park Drive_____
_____Montgomery, AL 36117_____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓]   Service by certified mail of this summons is initiated upon the written request of ___Plaintiff's attorney___ pursuant to the Alabama Rules of Civil Procedure.

Date   **MAY 2 2 2009** _____ *Anne-Marie Adams* By: _____
_____ Clerk/Register

[✓]  Certified Mail is hereby requested.

_____
Plaintiff's/Attorney's Signature

**FILED IN OFFICE**
MAY 2 2 2009

**ANNE-MARIE ADAMS**
**Clerk**

RETURN ON SERVICE:

[ ]  Return receipt of certified mail received in this office on _____.
_____(Date)

[ ]  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____County,
Alabama on _____.
_____(Date)

_____
Date

_____
Type of Process Server

_____
Server's Signature

_____
Address of Server

_____
Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS<br>-CIVIL-** | **Case Number**<br><br>C 200901588 |
|---|---|---|

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __LOUISIANA MUNICIPAL POLICE__   **v.   Defendant** _____ C. DOWD RITTER, et al. _____
_____EMPLOYEES RETIREMENT SYSTEM_____   _____

**NOTICE TO** _____ SUSAN W. MATLOCK, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF
YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH
THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR
YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE
ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND
COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR
THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the
defendant.

[✓]   Service by certified mail of this summons is initiated upon the written request of ___Plaintiff's attorney___
pursuant to the Alabama Rules of Civil Procedure.

Date ___MAY 2 2 2009___        _Anne-Marie Adams_        By: _____
                                        Clerk/Register

[✓]   Certified Mail is hereby requested.        _(signature)_        **FILED IN OFFICE**

                                        Plaintiff's/Attorney's Signature        **MAY 2 2 2009**
                                                        **ANNE-MARIE ADAMS**
                                                        **Clerk**

RETURN ON SERVICE:

[ ]   Return receipt of certified mail received in this office on _____ .
                                                                (Date)

[ ]   I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
                (Date)

_____        _____
Date                        Server's Signature

_____        _____
Type of Process Server      Address of Server

                            _____
                            Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34        Rev 6/88 | **SUMMONS<br>-CIVIL-** | **Case Number**<br>CV 2009 01589 |
|---|---|---|

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __LOUISIANA MUNICIPAL POLICE__ **v.** **Defendant** ___C. DOWD RITTER, et al.___
___EMPLOYEES RETIREMENT SYSTEM___

**NOTICE TO** _____ JORGE M. PEREZ, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ___GREGORY L. DAVIS___ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☑ Service by certified mail of this summons is initiated upon the written request of ___Plaintiff's attorney___ pursuant to the Alabama Rules of Civil Procedure.

Date ___MAY 2 2 2009___            _Anne-Marie Adams_ By: _____
                                   Clerk/Register

☑ Certified Mail is hereby requested.            _[signature]_            **FILED IN OFFICE**
                                   Plaintiff's/Attorney's Signature            **MAY 2 2 2009**

**RETURN ON SERVICE:**                           **ANNE-MARIE ADAMS**
                                                          **Clerk**

☐ Return receipt of certified mail received in this office on _____.
                                                          (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
            (Date)

_____            _____
Date                       Server's Signature

_____            _____
Type of Process Server      Address of Server

                           _____
                           Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br>C█200901588 |
|---|---|---|

IN THE _____ CIRCUIT _____ COURT OF _____ JEFFERSON _____ COUNTY

Plaintiff __LOUISIANA MUNICIPAL POLICE__ v. Defendant _____ C. DOWD RITTER, et al. _____
_____ EMPLOYEES RETIREMENT SYSTEM _____

NOTICE TO _____ JOHN R. ROBERTS, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of _Plaintiff's attorney_ pursuant to the Alabama Rules of Civil Procedure.

Date **MAY 2 2 2009**

_____ _Anne Marie Adams_ By: _____
Clerk/Register

FILED IN OFFICE

[✓] Certified Mail is hereby requested.

_____ Plaintiff's/Attorney's Signature

MAY 2 2 2009

ANNE-MARIE ADAMS
Clerk

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
(Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
(Date)

_____
Date

_____
Type of Process Server

_____
Server's Signature

_____
Address of Server

_____
Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br>C 200901588 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __LOUISIANA MUNICIPAL POLICE__ **v.** **Defendant** __C. DOWD RITTER, et al.__
__EMPLOYEES RETIREMENT SYSTEM__ _____

**NOTICE TO** _____ MICHAEL STARNES _____
6200 Poplar Avenue, Memphis, TN  38119-4713

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____GREGORY L. DAVIS_____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
Montgomery, AL  36117_____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of ___Plaintiff's attorney___ pursuant to the Alabama Rules of Civil Procedure.

Date __MAY 2 2 2009__          _Anne-Marie Adams_ By: _____
                               Clerk/Register

                                                              **FILED IN OFFICE**

[✓] Certified Mail is hereby requested.          _[signature]_          MAY 2 2 2009
                                        Plaintiff's/Attorney's Signature

                                                         **ANNE-MARIE ADAMS**
                                                                **Clerk**

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                                        (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____County,
Alabama on _____.
                  (Date)

_____          _____
Date                                       Server's Signature

_____          _____
Type of Process Server                     Address of Server

                                          _____

                                          _____
                                          Phone Number of Server

| State of Alabama Unified Judicial System | **SUMMONS** | Case Number |
|---|---|---|
| Form C-34        Rev 6/88 | **-CIVIL-** | C 2009 01589 |

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __ LOUISIANA MUNICIPAL POLICE __ **v.** **Defendant** _____ C. DOWD RITTER, et al. _____
_____ EMPLOYEES RETIREMENT SYSTEM _____

**NOTICE TO** _____ LEE J. STYSLINGER, III, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL 35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL 36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of __ Plaintiff's attorney __ pursuant to the Alabama Rules of Civil Procedure.

Date __ MAY 2 2 2009 __          _Anne-Marie Adams_ By: _____
                                       Clerk/Register

[✓] Certified Mail is hereby requested.

                                       Plaintiff's/Attorney's Signature

FILED IN OFFICE
MAY 2 2 2009
ANNE-MARIE ADAMS
Clerk

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
                (Date)

_____
Date

_____
Type of Process Server

_____
Server's Signature

_____
Address of Server

_____
Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS<br>-CIVIL-** | **Case Number**<br><br>C■200901588 |
|---|---|---|

IN THE _____ CIRCUIT · _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

Plaintiff ___ LOUISIANA MUNICIPAL POLICE ___ **v.** **Defendant** _____ C. DOWD RITTER, et al. _____
_____ EMPLOYEES RETIREMENT SYSTEM _____ _____

**NOTICE TO** _____ ROBERT R. WALLER, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue N., Birmingham, AL 35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL 36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓]   Service by certified mail of this summons is initiated upon the written request of ___ Plaintiff's attorney ___ pursuant to the Alabama Rules of Civil Procedure.

Date   **MAY 2 2 2009** _____   *Anne-Marie Adams* By: _____
_____ Clerk/Register

**FILED IN OFFICE**

[✓]  Certified Mail is hereby requested.   _____
_____ Plaintiff's/Attorney's Signature

**MAY 2 2 2009**

**ANNE-MARIE ADAMS**
Clerk

RETURN ON SERVICE:

[ ]  Return receipt of certified mail received in this office on _____.
_____ (Date)

[ ]  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
_____ (Date)

| _____<br>Date | _____<br>Server's Signature |
|---|---|
| _____<br>Type of Process Server | _____<br>Address of Server |
| | _____ |
| | _____<br>Phone Number of Server |

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br><br>C 200901588 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __LOUISIANA MUNICIPAL POLICE__ **v. Defendant** __C. DOWD RITTER, et al.__
__EMPLOYEES RETIREMENT SYSTEM__

**NOTICE TO** _____ SPENCE L. WILSON _____
__8700 West Trail Lake Drive, Suite 300, Memphis, TN  38125-8200__

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of __Plaintiff's attorney__ pursuant to the Alabama Rules of Civil Procedure.

MAY 2 2 2009
Date _____        _Anne Marie Adams_____ By: _____
                                         Clerk/Register

[✓] Certified Mail is hereby requested.

Plaintiff's/Attorney's Signature

**FILED IN OFFICE**

MAY 2 2 2009

**ANNE-MARIE ADAMS**
**Clerk**

**RETURN ON SERVICE:**

[ ] Return receipt of certified mail received in this office on _____.
                                                    (Date)
[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____County,
Alabama on _____.
              (Date)

_____
Date

_____
Type of Process Server

_____
Server's Signature

_____
Address of Server

_____

_____
Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br><br>C 2 0 0 9 0 1 5 8 9 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __ LOUISIANA MUNICIPAL POLICE __ **v.  Defendant** ____ C. DOWD RITTER, et al. ____
_____ EMPLOYEES RETIREMENT SYSTEM _____

**NOTICE TO** _____ HARRY W. WITT _____
_____ 6516 Thomas Jefferson Court, Naples, FL  34108 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __ 30 __ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓]   Service by certified mail of this summons is initiated upon the written request of ___ Plaintiff's attorney ___ pursuant to the Alabama Rules of Civil Procedure.

Date ___ MAY 2 2 2009 ___

_____ By _____
Clerk/Register

*Anne Marie Adams*

FILED IN OFFICE

MAY 2 2 2009

ANNE-MARIE ADAMS
Clerk

[✓]   Certified Mail is hereby requested.

_____
Plaintiff's/Attorney's Signature

**RETURN ON SERVICE:**

[ ]   Return receipt of certified mail received in this office on _____ .
_____ (Date)

[ ]   I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
_____ (Date)

_____
Date

_____
Type of Process Server

_____
Server's Signature

_____
Address of Server

_____
Phone Number of Server

| State of Alabama Unified Judicial System | **SUMMONS -CIVIL-** | Case Number |
|---|---|---|
| Form C-34      Rev 6/88 | | C 200901580 |

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

Plaintiff  LOUISIANA MUNICIPAL POLICE   **v.  Defendant**   C. DOWD RITTER, et al.
EMPLOYEES RETIREMENT SYSTEM _____

**NOTICE TO** _____ O.B. GRAYSON HALL, JR., c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL 35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL 36117 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☑ Service by certified mail of this summons is initiated upon the written request of _____ Plaintiff's attorney
pursuant to the Alabama Rules of Civil Procedure.

MAY 2 2 2009

Date _____

_____
Clerk/Register

*Anne-Marie Adams*

By:
FILED IN OFFICE

MAY 2 2 2009

ANNE-MARIE ADAMS
Clerk

☑ Certified Mail is hereby requested.

_____
Plaintiff's/Attorney's Signature

**RETURN ON SERVICE:**

☐ Return receipt of certified mail received in this office on _____ .
(Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
(Date)

_____
Date

_____
Type of Process Server

_____
Server's Signature

_____
Address of Server

_____

_____
Phone Number of Server

| State of Alabama Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br>C 200901589 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** ___ LOUISIANA MUNICIPAL POLICE ___ **v.** **Defendant** ___ C. DOWD RITTER, et al. ___
_____ EMPLOYEES RETIREMENT SYSTEM _____

**NOTICE TO** _____ EARNEST W. DEAVENPORT, JR., c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL 35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL 36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of ___ Plaintiff's attorney ___ pursuant to the Alabama Rules of Civil Procedure.

Date ___ MAY 2 2 2009 ___                  _Anne-Marie Adams_                  **FILED IN OFFICE**
                                           Clerk/Register                      MAY 2 2 2009

[✓] Certified Mail is hereby requested.                                        **ANNE-MARIE ADAMS**
                                           Plaintiff's/Attorney's Signature         **Clerk**

**RETURN ON SERVICE:**

[ ] Return receipt of certified mail received in this office on _____.
                                                                          (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
              (Date)

_____
Date

_____
Type of Process Server

_____
Server's Signature

_____
Address of Server

_____
Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br><br>C▯200901588 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __ LOUISIANA MUNICIPAL POLICE __ **v.** **Defendant** ___ C. DOWD RITTER, et al. ___
_____ EMPLOYEES RETIREMENT SYSTEM _____

**NOTICE TO** _____ DAVID J. COOPER, SR., c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __ 30 __ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of ___ Plaintiff's attorney ___ pursuant to the Alabama Rules of Civil Procedure.

Date _____ MAY 22 2009 _____

_Anne-Marie Adams_   By: _____
Clerk/Register

**FILED IN OFFICE**

[✓] Certified Mail is hereby requested.

_____
Plaintiff's/Attorney's Signature

MAY 22 2009
**ANNE-MARIE ADAMS**
Clerk

**RETURN ON SERVICE:**

[ ] Return receipt of certified mail received in this office on _____.
(Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
(Date)

_____
Date

_____
Server's Signature

_____
Type of Process Server

_____
Address of Server

_____
Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br><br>C 2009 01588 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** LOUISIANA MUNICIPAL POLICE **v. Defendant** C. DOWD RITTER, et al.
EMPLOYEES RETIREMENT SYSTEM

**NOTICE TO** _____ DONALD DeFOSSET, c/o Regions Financial Corporation _____
1900 Fifth Avenue North, Birmingham, AL 35203

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
Montgomery, AL 36117 .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓]  Service by certified mail of this summons is initiated upon the written request of _____ Plaintiff's attorney _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____ MAY 2 2 2009 _____   _Anne Marie Adams_ _____ By: _____
                                      Clerk/Register

**FILED IN OFFICE**

[✓]  Certified Mail is hereby requested.   _[signature]_

Plaintiff's/Attorney's Signature

MAY 2 2 2009

**ANNE-MARIE ADAMS**
Clerk

RETURN ON SERVICE:

[ ]  Return receipt of certified mail received in this office on _____ .
                                                                        (Date)

[ ]  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
              (Date)

_____
Date

_____
Type of Process Server

_____
Server's Signature

_____
Address of Server

_____
Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br><br>CV 2009 01588 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __LOUISIANA MUNICIPAL POLICE__ **v.** **Defendant** ___C. DOWD RITTER, et al.___
_____ EMPLOYEES RETIREMENT SYSTEM _____ _____

**NOTICE TO** _____ JAMES R. MALONE, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☑   Service by certified mail of this summons is initiated upon the written request of ___Plaintiff's attorney___ pursuant to the Alabama Rules of Civil Procedure.

Date ___MAY 2 2 2009___          _Anne-Marie Adams_ By: _____
                                                 Clerk/Register

                                                                    FILED IN OFFICE

☑   Certified Mail is hereby requested.                              MAY 2 2 2009

                                    Plaintiff's/Attorney's Signature   ANNE-MARIE ADAMS
                                                                              Clerk

RETURN ON SERVICE:

☐  Return receipt of certified mail received in this office on _____.
                                                                                    (Date)

☐  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
                  (Date)

_____          _____
Date                             Server's Signature

_____          _____
Type of Process Server           Address of Server

                                 _____

                                 _____
                                 Phone Number of Server

| State of Alabama Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>C 2009 01588 |
|---|---|---|

**IN THE**        CIRCUIT        **COURT OF**        JEFFERSON        **COUNTY**

**Plaintiff**   LOUISIANA MUNICIPAL POLICE   **v.  Defendant**        C. DOWD RITTER, et al.
                EMPLOYEES RETIREMENT SYSTEM

**NOTICE TO**        CHARLES D. McCRARY, c/o Regions Financial Corporation
                     1900 Fifth Avenue North, Birmingham, AL  35203

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY        GREGORY L. DAVIS        WHOSE ADDRESS IS                 6987 Halcyon Park Drive
                         Montgomery, AL  36117                        .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN     30     DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☑  Service by certified mail of this summons is initiated upon the written request of   Plaintiff's attorney   pursuant to the Alabama Rules of Civil Procedure.

Date     MAY 2 2 2009            *Anne Marie Adams*  By: _____
                                 Clerk/Register

---

☑  Certified Mail is hereby requested.        *[signature]*

                                 Plaintiff's/Attorney's Signature

FILED IN OFFICE
MAY 2 2 2009
ANNE-MARIE ADAMS
Clerk

---

RETURN ON SERVICE:

☐  Return receipt of certified mail received in this office on _____.
                                                              (Date)
☐  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____  in _____County,
Alabama on _____.
                (Date)

_____
Date

_____
Type of Process Server

_____
Server's Signature

_____
Address of Server

_____

_____
Phone Number of Server

| State of Alabama<br>Unified Judicial System | **SUMMONS<br>-CIVIL-** | Case Number |
|---|---|---|
| Form C-34     Rev 6/88 | | C 0 2 0 0 9 0 1 5 8 9 |

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** _LOUISIANA MUNICIPAL POLICE_ **v. Defendant** _C. DOWD RITTER, et al._
_EMPLOYEES RETIREMENT SYSTEM_

**NOTICE TO** _____ CLAUDE B. NIELSON, c/o Regions Financial Corporation _____
_1900 Fifth Avenue North, Birmingham, AL  35203_

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_Montgomery, AL  36117_ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of _Plaintiff's attorney_ pursuant to the Alabama Rules of Civil Procedure.

**MAY 2 2 2009**

Date _____          _Jane Marie Adams_ By: _____
                    Clerk/Register                **FILED IN OFFICE**

[✓] Certified Mail is hereby requested.          **MAY 2 2 2009**
                    Plaintiff's/Attorney's Signature    **ANNE-MARIE ADAMS**
                                        **Clerk**

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____ .
                                        (Date)
[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
          (Date)

Date _____                    Server's Signature _____

Type of Process Server _____        Address of Server _____
                            _____

                            Phone Number of Server _____

| State of Alabama<br>Unified Judicial System<br><br>Form C-34     Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br><br>C  200901589 |
|---|---|---|

**IN THE** _____CIRCUIT_____ **COURT OF** _____JEFFERSON_____ **COUNTY**

**Plaintiff** ___LOUISIANA MUNICIPAL POLICE___ **v. Defendant** ___C. DOWD RITTER, et al.___
_____EMPLOYEES RETIREMENT SYSTEM_____     _____

**NOTICE TO** _____JOHN E. MAUPHIN, JR., c/o Regions Financial Corporation_____
_____1900 Fifth Avenue North, Birmingham, AL 35203_____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____GREGORY L. DAVIS_____ WHOSE ADDRESS IS _____6987 Halcyon Park Drive_____
_____Montgomery, AL 36117_____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ]   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓]   Service by certified mail of this summons is initiated upon the written request of ___Plaintiff's attorney___ pursuant to the Alabama Rules of Civil Procedure.

Date   **MAY 2 2 2009** _____     _Anne-Marie Adams_ By: _____
                                      Clerk/Register

                                                              **FILED IN OFFICE**

[✓]   Certified Mail is hereby requested.     _(signature)_

                                      Plaintiff's/Attorney's Signature     MAY 2 2 2009

                                                              **ANNE-MARIE ADAMS**
                                                                    **Clerk**

**RETURN ON SERVICE:**

[ ]   Return receipt of certified mail received in this office on _____.
                                                                                  (Date)

[ ]   I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____County,
Alabama on _____.
              (Date)

_____
Date

_____
Type of Process Server

_____
Server's Signature

_____
Address of Server

_____

_____
Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br><br>C 200901589 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __LOUISIANA MUNICIPAL POLICE__ **v. Defendant** ___C. DOWD RITTER, et al.___
_____EMPLOYEES RETIREMENT SYSTEM_____

**NOTICE TO** _____ WILLIAM C. WELLS, II, c/o Regions Financial Corporation _____
_____ 1900 Fifth Avenue North, Birmingham, AL  35203 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL  36117 _____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☑ Service by certified mail of this summons is initiated upon the written request of __Plaintiff's attorney__ pursuant to the Alabama Rules of Civil Procedure.

Date __MAY 2 2 2009__        _Anne Marie Adams_ By: _____
_____ Clerk/Register

**FILED IN OFFICE**

☑ Certified Mail is hereby requested.        MAY 2 2 2009
_____ Plaintiff's/Attorney's Signature

**ANNE-MARIE ADAMS**
**Clerk**

**RETURN ON SERVICE:**

☐ Return receipt of certified mail received in this office on _____ .
_____ (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
_____ (Date)

| _____<br>Date | _____<br>Server's Signature |
|---|---|
| _____<br>Type of Process Server | _____<br>Address of Server |
| | _____<br>_____<br>Phone Number of Server |

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS<br>-CIVIL-** | **Case Number**<br><br>C 200901588 |
|---|---|---|

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** LOUISIANA MUNICIPAL POLICE **v. Defendant** C. DOWD RITTER, et al.
EMPLOYEES RETIREMENT SYSTEM

**NOTICE TO** _____ MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED _____
c/o The Corporation Company, 2000 Interstate Park Dr., Ste 204, Montgomery, AL 36109

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE ADDRESS IS _____ 6987 Halcyon Park Drive _____
_____ Montgomery, AL 36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of __Plaintiff's attorney__ pursuant to the Alabama Rules of Civil Procedure.

Date _____ MAY 2 2 2009 _____          _Anne-Marie Adams_ By: _____
                                        Clerk/Register                   FILED IN OFFICE

[✓] Certified Mail is hereby requested.                                  MAY 2 2 2009
                                        Plaintiff's/Attorney's Signature  ANNE-MARIE ADAMS
                                                                          Clerk

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                              (Date)
[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
              (Date)

_____          _____
Date                            Server's Signature

_____          _____
Type of Process Server          Address of Server

                                _____

                                _____
                                Phone Number of Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34  Rev 6/88 | SUMMONS<br>-CIVIL- | Case Number<br><br>CV200901588 |
| --- | --- | --- |

**IN THE** _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** LOUISIANA MUNICIPAL POLICE _____ **v.** **Defendant** _____ C. DOWD RITTER, et al. _____
         EMPLOYEES RETIREMENT SYSTEM

**NOTICE TO** _____ ERNST & YOUNG LLP, c/o Larry C. Mingledorf, AmSouth/Harbert Plaza _____
         Ste 1900, 1901 Sixth Avenue N., Suite 1200, Birmingham, AL 35203

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF
YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH
THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR
YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ GREGORY L. DAVIS _____ WHOSE
ADDRESS IS _____ 6987 Halcyon Park Drive _____
         Montgomery, AL 36117 _____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND
COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR
THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the
defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of __ Plaintiff's attorney __
pursuant to the Alabama Rules of Civil Procedure.

Date **MAY 2 2 2009** _____ _Anne Marie Adams_ By: _____
         Clerk/Register

FILED IN OFFICE

[✓] Certified Mail is hereby requested. _____

MAY 2 2 2009

         Plaintiff's/Attorney's Signature

ANNE-MARIE ADAMS
Clerk

**RETURN ON SERVICE:**

[ ] Return receipt of certified mail received in this office on _____.
                                     (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
               (Date)

_____
Date

_____
Type of Process Server

_____
Server's Signature

_____
Address of Server

_____
Phone Number of Server

| State of Alabama Unified Judicial System | SUMMONS -CIVIL- | Case Number |
|---|---|---|
| Form C-34       Rev 6/88 | | C 200901589 |

IN THE _____ CIRCUIT _____ **COURT OF** _____ JEFFERSON _____ **COUNTY**

**Plaintiff** __LOUISIANA MUNICIPAL POLICE__ **v.** **Defendant** ____C. DOWD RITTER, et al.____
_____EMPLOYEES RETIREMENT SYSTEM_____                           _____

**NOTICE TO** __REGIONS FINANCIAL CORPORATION, c/o CSC Lawyers Incorporating Svc, Inc.__
_____150 S. Perry Street, Montgomery, AL 36104_____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____GREGORY L. DAVIS_____WHOSE ADDRESS IS _____6987 Halcyon Park Drive_____
_____Montgomery, AL 36117_____.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

☐  You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☑  Service by certified mail of this summons is initiated upon the written request of ___Plaintiff's attorney___ pursuant to the Alabama Rules of Civil Procedure.     *Anne Marie Adams*

Date ___MAY 2 2 2009___                    _____ By: _____
                                           Clerk/Register

☑  Certified Mail is hereby requested.                              **FILED IN OFFICE**

                    _____                    MAY 2 2 2009
                    Plaintiff's/Attorney's Signature

                                           **ANNE-MARIE ADAMS**
                                           **Clerk**

**RETURN ON SERVICE:**

☐  Return receipt of certified mail received in this office on _____.
                                                           (Date)
☐  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____County,
Alabama on _____.
                    (Date)

_____                    _____
Date                                Server's Signature

_____                    _____
Type of Process Server              Address of Server

                                    _____

                                    _____
                                    Phone Number of Server

IN THE CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA

C█200901589

| | | |
|---|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM, derivatively for the Benefit of, and on behalf of, Nominal Party, REGIONS FINANCIAL CORPORATION, | ) ) ) ) ) ) ) | CIVIL ACTION NO. _____ |
| Plaintiff, | ) ) | |
| vs. | ) ) | **FILED IN OFFICE** |
| C. DOWD RITTER, JACKSON W. MOORE, IRENE ESTEVES, ALTON E. YOTHER, D. BRYAN JORDAN, RONALD C. JACKSON, RICHARD D. HORSLEY, ALLEN B. MORGAN, JR., SAMUEL W. BARTHOLOMEW, JR., GEORGE W. BRYAN, MARGARET H. GREENE, SUSAN W. MATLOCK, JORGE M. PEREZ, JOHN R. ROBERTS, MICHAEL S. STARNES, LEE J. STYSLINGER, III, ROBERT R. WALLER, SPENCE L. WILSON, HARRY W. WITT, O.B. GRAYSON HALL, JR., EARNEST W. DEAVENPORT, JR., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MAY 22 2009 ANNE-MARIE ADAMS Clerk |
| [Caption continued on following page.] | ) ) ) | JURY TRIAL DEMANDED |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT
FOR BREACH OF FIDUCIARY DUTY, CORPORATE
WASTE, ABUSE OF CONTROL, AIDING AND ABETTING
AND BREACH OF PROFESSIONAL DUTIES

DAVID J. COOPER SR., DONALD          )
DeFOSSET, JAMES R. MALONE,            )
CHARLES D. McCRARY, CLAUDE            )
B. NIELSEN, JOHN E. MAUPIN JR.,       )
WILLIAM C. WELLS, II, MERRILL         )
LYNCH, PIERCE, FENNER & SMITH         )
INCORPORATED and ERNST &              )
YOUNG LLP,                            )
                                      )
                    Defendants,       )
                                      )
and                                   )
                                      )
REGIONS FINANCIAL                     )
CORPORATION, a Delaware               )
Corporation,                          )
                                      )
                    Nominal Party.    )
                                      )

Plaintiff, for its verified derivative complaint, by its undersigned attorneys, alleges upon personal knowledge as to itself, and upon information and belief as to all other matters, as follows:

## INTRODUCTION AND SUMMARY OF THE ACTION

1.     Plaintiff, Louisiana Municipal Police Employees Retirement System, by its undersigned attorneys, submits this Verified Derivative Complaint. This is a shareholders' derivative action brought in the name of and for the benefit of nominal defendant Regions Financial Corporation ("Regions" or the "Company") against certain current and former executive officers and members of the Board of Directors of Regions (the "Individual Defendants"). The action arises from these defendants' breaches of fiduciary duties, waste of Regions' corporate assets, and abuse of their control of Regions in connection with their causing, approving, and/or acquiescing in Regions' approximately $10 billion acquisition of AmSouth Corporation ("AmSouth") in November 2006, and the falsification of Regions' financial statements, merger proxy and prospectus filed with the Securities and Exchange Commission ("SEC") prior to, during and following the acquisition of AmSouth (the "Acquisition"). Following the Acquisition, while the Company's assets, shareholders' equity and income were being materially overstated due to delaying a write-down on the goodwill attributable to the Acquisition, the Individual Defendants also caused Regions to file and have declared effective a false and

- 1 -

misleading registration statement and prospectus (collectively, the "Prospectus") used to conduct a $345 million registered securities offering on April 28, 2008 (the "April 2008 Offering"). Suddenly, in January 2009, the Company was forced to announce it must write-down *$6 billion worth of goodwill it has carried since the AmSouth Acquisition, approximately 60% of the $10 billion purchase price*. Regions has since been sued in a class action brought by investors under the federal securities laws in connection with their purchases of securities offered by Regions in the Company's April 2008 Offering claiming Regions is strictly liable for their damages and seeking rescission.

2.     Moreover, following Regions' acceptance of $3.5 billion Trouble Asset Recovery Program ("TARP") funds in November 2008, the Company was required to, among other things, institute strict executive compensation restrictions, comply with risk-reduction protocols and to *"clawback" any bonuses, retention awards and incentive compensation paid to senior executive officers if they were based on materially inaccurate financial statements or any other materially inaccurate performance metric criteria* (whether or not the executive was at fault, any misconduct occurred, or the financial statements were restated).   Rather than complying with these mandatory TARP provisions, in early 2009, Regions' Board of Directors authorized and approved excessive bonuses, compensation and other benefits for its directors and executive officers at a time when the Company was

experiencing significant losses, including material declines in Company revenues as well as a concomitant and precipitous decline in its share value. This action also challenges the Individual Defendants' decision to engage in speculative commercial investment transactions at a time when market conditions had already begun to deteriorate. This action seeks to recoup as damages to the Company the amount of such excessive bonuses, compensation and other benefits which have been improperly bestowed upon and wrongfully retained by certain executive officers and directors of Regions in breach of their fiduciary duties, as well as all losses sustained as a result of the Individual Defendants' gross mismanagement.

3.    Also named as defendants are Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), Regions' financial advisor in the Acquisition and an underwriter in the April 2008 Offering, and Ernst & Young LLP ("E&Y"), which served as both Regions' and AmSouth's outside auditor prior to, during and following the Acquisition.  Merrill Lynch and E&Y are alleged to have aided and abetted the Individual Defendants' breaches of fiduciary duty to Regions and related state law violations, and to have breached their professional duties to Regions.

**OVERVIEW OF THE ACTION**

4.    When Jackson W. Moore ("Moore") and C. Dowd Ritter ("Ritter"), Regions' and AmSouth's Chairmen and Chief Executive Officers ("CEO"), respectively, decided in the Spring of 2006 that Regions would acquire AmSouth,

- 3 -

Moore and Ritter quickly rushed approval of the Acquisition through the Regions and AmSouth Boards in May 2006 – giving Merrill Lynch only five days to do what due diligence it could in order to form an opinion as to the fairness of the exchange to Regions' shareholders.  As a result, neither the Regions Board nor Merrill Lynch had the time to, nor conducted, an appropriate market check on the price being paid, performed meaningful due diligence or conducted reliable checks on the credit quality and lending standards AmSouth had employed to grow its risky loan portfolio so quickly.  This was critical because AmSouth had just pledged in 2004 to "double" its presence in the red-hot Florida real estate lending market and had just started experimenting with adjustable mortgages, many of which it was keeping on its books rather than repackaging and selling as had been AmSouth's past practice.

     5.    Completing the AmSouth Acquisition, first announced in May 2006, despite its deleterious effect on Regions' balance sheet and good name, and continuing to falsify "new Regions'" financial statements following the Acquisition to cover their tracks was viewed as imperative to defendants as it would:

- permit Regions to become the nations' eighth largest bank (by total assets), purportedly entitling the directors and senior executives of both banks to the perks and prestige that went along with that designation;

- provide a means for AmSouth to abandon its own bad name and to polish its image which had been detrimentally damaged in connection with AmSouth's 2004 plea to federal money laundering charges, resulting in its

payment of a $50 million fine and becoming subject to draconian federal oversight provisions in connection with a deferred prosecution agreement;

- facilitate the $345 million April 2008 Offering, exposing Regions to hundreds of millions of dollars in potential *strict* liability to investors;

- allow E&Y, which had served as both Regions' and AmSouth's outside auditors for many years prior to the Acquisition, to retain Regions, E&Y's Birmingham office's biggest customer, as its biggest client; and

- allow Merrill Lynch to obtain millions of dollars in investment banking fees on this transaction and additional securities offerings Regions would undertake after the Acquisition closed (including the April 2008 Offering), co-managing some deals with Regions' Morgan Keegan subsidiary.

6.    AmSouth and Regions announced plans to "merge" on May 25, 2006. In actuality, Regions, a valuable and well-established Birmingham bank charted in 1970 as Alabama's first multi-bank company, would be acquiring the overvalued assets of AmSouth, a less prestigious bank whose former good name had been significantly sullied by AmSouth's 2004 plea to federal money laundering charges. Under the agreement announced, each share of AmSouth would be exchanged for 0.7974 share of Regions common stock. Based on the closing prices of Regions' and AmSouth's stock, the Companies estimated the market capitalization of the combined entity would be approximately $26 billion. The deal valued AmSouth shares at $28.33 each, putting the overall value of the deal at approximately $10 billion. The companies' joint press release issued on May 25, 2006 promised,

> The combined company will have leading positions in some of the fastest growing markets in the United States as well as a broad, balanced mix of businesses including retail and commercial banking, trust and

- 5 -

asset management, securities brokerage, mortgage and insurance services.

*"AmSouth shares Regions' passion for delivering superior customer service, and the combined company will be in an excellent position to raise service standards," said Moore. "Our companies have similar goals, shared values and solid experience in putting organizations together. We will take a deliberate, methodical approach to integrating our companies, making certain that customers continue to receive high quality service.*

*"I am confident the new Regions will emerge as the leading regional financial services provider, delivering superior shareholder returns on a consistent basis."*

*"Combining AmSouth and Regions creates a company with market-leading positions in some of the best markets in the country," said Ritter.*

*"These companies complement each other in many ways, and together, led by one of the strongest management teams in the business, we will have an even greater ability to deliver superior service to our customers. All of that translates to a greater opportunity for increased shareholder value. The appeal of this combination by every measure – strategically, financially or operationally – is extraordinary."*

[Emphasis added.]

Defendants also presented the following slide during their conference announcing the "merger" and promised the Acquisition would be imminently valuable to Regions and its shareholders alike:

- 6 -



7.     To further incentivize the shareholder support needed for the

Acquisition, the companies also ran an advertisement in the *Birmingham Business*

*Journal* characterizing the transaction as a "merger of equals," though it was

anything but:

> The merger of Regions Financial Corp. and AmSouth
> Bancorporation is an unprecedented opportunity to combine two
> of Birmingham's greatest companies, cement the city's status
> nationally as a banking center, and create a new company that still
> traces its roots to the city's founding, continuing to play a key role
> in community development. ***This merger of equals will create***
> ***one of the top 10 bank holding companies in the United States***
> with nearly $140 billion in total assets.  The new Regions will
> have leading positions in some of the fastest growing markets in
> the U.S. as well as abroad, a balanced mix of businesses including
> retail and commercial banking, trust and asset management,
> securities brokerage, and mortgage and insurance services,
> creating a company with scale, breadth, and the diversification
> necessary to continue generating shareholder value.  The new

- 7 -

> Regions will have nearly five million customer households, approximately 2,000 offices and 2,800 ATMs across 16 states, creating greater convenience for customers. Our customers will be served by more than 30,000 employees.

[Emphasis added.]

8.      In fact, the Merger Proxy filed with the SEC and sent to Regions' and AmSouth's shareholders, advised that the transaction was in reality an "acquisition" of AmSouth by Regions and that the balance of the purchase price that could not be directly attributed to a tangible asset – *an astounding $6 billion of the approximately $10 billion being paid -* would be recorded as "goodwill," or "excess purchase price," on new Regions' balance sheets following the Acquisition:

### Accounting Treatment

> The merger will be accounted for as a "purchase" by Regions of AmSouth, as that term is used under U.S. Generally Accepted Accounting Principles, which we refer to as GAAP, for accounting and financial reporting purposes. As a result, the historical financial statements of Regions will continue to be the historical financial statements of Regions following the completion of the merger. The assets (including identifiable intangible assets) and liabilities (including executory contracts and other commitments) of AmSouth as of the effective time of the merger will be recorded at their respective fair values and added to those of Regions. *Any excess of purchase price over the net fair values of AmSouth assets and liabilities is recorded as goodwill (excess purchase price).*

[Emphasis added.]

9.      With no knowledge of the pending financial catastrophe, Regions' and AmSouth's shareholders overwhelmingly approved the Acquisition on October 3,

2006 – causing a massive "brain drain" as Regions' senior executives moved onto greener pastures and left the operations of the Regions franchise in the hands of Ritter and his AmSouth cronies.

10.     For instance, Regions' investors were told that in connection with the Acquisition, Moore would continue on as the combined entity's Chairman and that he had entered into a sweetened four-year employment agreement commencing upon completion of the Acquisition – described in the merger agreement as follows:

> On completion of the merger, all equity-based compensation awards will vest and options will remain exercisable in accordance with their terms. ***Following completion of the merger, Mr. Moore will be paid his accrued SERP benefit, the balance of his deferred stock account and the change-in-control benefits under his existing employment agreement.*** In addition, Regions will honor the existing terms of the trust agreement pertaining to the payment of premiums on Mr. Moore's life insurance policy. In the event that, during the term, Mr. Moore's employment is terminated by Regions without "cause" or by Mr. Moore for "good reason," Mr. Moore will be paid a lump sum cash payment equal to the sum of (1) a pro rata bonus for the year of termination and (2) Mr. Moore's annual base salary and average annual bonus as Chairman (or if no such bonus has been paid, his last bonus as chief executive officer) for the remainder of the term. In addition, upon such a termination all equity compensation awards will vest and remain exercisable for their full term.

[Emphasis added.]

11.     In reality, Moore would check out within one year, leaving Ritter to assume the reins as the combined entity's Chairman and CEO. In fact, by June 2008, at least seven Regions executives had left to start their own banks in the Southeast, most of them taking teams of colleagues and scores of formerly

established Regions banking customers with them, something *American Banker* characterized as a "mass exodus of talent."  Despite the mortgage crisis already spiraling out of control, former Regions executives told *American Banker* that it was a good time to open a bank because the organizers would start with a clean slate: ***"You're going to beat the heck out of the guy down the street who has loan problems and can't really do anything – He's boxed himself in and you're going to be able to pick off his customers."***

12.   The Acquisition was rushed through and accomplished because defendants made it appear that Regions was acquiring the seemingly rapid profitable growth attributed to AmSouth's burgeoning Florida mortgage assets, which would result in those assets being owned by the public shareholders, achieving significant net income and earnings per share ("EPS") growth and its stock price trading at a higher price/earnings ratio than had been the case with the Regions stock, which was supposedly penalized by being a slower growth company.

13.   Shareholders of both companies approved the transaction in October 2006.  The Company's October 3, 2006 press release announcing shareholder approval of the "merger" and lauding its benefit to Regions and its shareholders stated in relevant part:

> ***"This merger creates a top regional financial services provider with leading positions in some of the best markets in the United States,"*** said Regions Chairman, President and Chief Executive Officer Jackson W. Moore.

*"We are pleased that our shareholders have recognized all the benefits that this transaction has to offer."* Moore will serve as chairman of the Board of Directors for the new Regions.

*"Because AmSouth and Regions fit together so well, we will be able to provide our customers with a wider range of products and services as well as more convenient locations, which we believe ultimately will lead to greater shareholder value,"* said C. Dowd Ritter, chairman, president and chief executive officer of AmSouth.  Ritter will serve as president and chief executive officer of the new Regions.

The combination of the two companies will create a bank holding company with $142 billion in assets, nearly $100 billion in deposits and nearly 2,000 branches in 16 states across the South, Midwest and Texas. Combined, the two companies employ approximately 37,000 people.

The new Regions will rank among the top 10 U.S. bank holding companies in several important measures.  The new company will be:

- Approximately eighth largest by assets;

- Seventh largest by number of full-service branches;

- Seventh largest by number of ATMs; and

- Eighth largest by market capitalization.

AmSouth and Regions announced plans to merge in May 2006 and expect that the transaction will close in November, pending customary regulatory approvals.

*The combined company will have leading positions in some of the fastest growing markets in the United States as well as a broad, balanced mix of businesses including retail and commercial banking, trust and asset management, securities brokerage, mortgage and insurance services.*

[Emphasis added.]

14.     On November 4, 2006, Regions announced that it had completed the

transaction.  In connection with the Acquisition, Regions issued and delivered over

- 11 -

277 million shares of its common stock – valued at approximately $10 billion – in exchange for AmSouth's assets.  As a result, Regions' former shareholders' ownership of the new combined company was reduced to 62%.

15.    Following the Acquisition, defendants continued causing Regions to issue materially false and misleading statements regarding the Company's business and financial results, and concealed the Company's failure to properly account for its troubled loan portfolio and billions of dollars in impaired "goodwill" attributable to the AmSouth acquisition.

16.    On March 1, 2007, Regions filed its Form 10-K for its fiscal year ending December 31, 2006, the first financial report following the Acquisition which included the AmSouth assets. ***The Form 10-K falsely stated that Regions' goodwill balance for the fiscal year ending December 31, 2006 was $11.2 billion, reporting that its goodwill was not impaired.***  Defendants Ritter and Jordan also signed and filed false and misleading Sarbanes-Oxley certifications indicating Regions' annual financial reports did not contain any material misstatements, fairly represented "in all material respects the financial condition [and] results of operations" of Regions and that Regions' internal accounting controls were well designed and effective.

17.     Regions continued reporting record financial growth for the interim quarters during fiscal 2007 and continued reporting that the goodwill attributable to the AmSouth acquisition was not impaired.

18.     On or about April 28, 2008, defendants caused Regions to file the false and misleading prospectus for the April 2008 Offering with the SEC which stated Regions had $141 billion in assets and $19.8 billion in shareholders' equity – including the $6 billion in goodwill attributable to the AmSouth Acquisition. The Prospectus also expressly incorporated by reference Regions' Fiscal 2007 annual report, including (with E&Y's consent) E&Y's clean audit opinion, and certain other disclosures filed with SEC subsequent to the filing of the registration statement in May 2007. On or about April 28, 2008, the Individual Defendants and Merrill Lynch caused Regions to issue and sell 13.8 million shares of the securities to the public at $25 each, receiving gross proceeds of $345 million. The Prospectus contained material misstatements concerning the value of the Company's real estate loan portfolio and its goodwill, as alleged herein, exposing Regions to hundreds of millions of dollars in potential *strict* liability to investors for violations of the 1933 Securities Act.

19.     Suddenly, on October 22, 2008, the Individual Defendants disclosed that Regions had been invited to participate in the U.S. Government's TARP bailout

program and that they intended to cause Regions to accept $3.5 billion in TARP

funds.

20.    With its receipt of TARP funds, the investment community began

scrutinizing Regions' financial statements.  On October 23, 2008, *The Wall Street*

*Journal* issued an article entitled "***Regions Financial Must Think We're All***

***Stoned***," which stated in relevant part:

> As of Sept. 30, Regions had a $1.5 billion loan-loss allowance,
> equivalent to just 83 percent of its nonperforming assets, which were
> $1.8 billion.  A year earlier, Regions' allowance was at 175 percent of
> nonperforming assets.  A year before that, it was at 249 percent.
>
> Keeping Up
>
> ***Common sense tells you a bank's loan-loss allowance, in an economic***
> ***decline, should be rising as a percentage of nonperforming assets.  It's***
> ***the reserve a lender sets up on its balance sheet in anticipation of bad***
> ***loans.  At Regions, the allowance hasn't kept up.***

[Emphasis added.]

21.    Despite *The Wall Street Journal's* and other members of the financial

and investment community's criticism, the Individual Defendants continued

reporting a grossly inflated value of the goodwill attributable to the AmSouth

Acquisition, with its balance sheet materially overstating assets, shareholder equity

and, as a result of not taking the impairment charge on the goodwill attributable to

the AmSouth Acquisition, overstating Regions' income.

22.    However, the Individual Defendants and E&Y would not be able to

keep up the charade in connection with preparing Regions' Fiscal 2008 audited

- 14 -

financial reports and so, suddenly, on January 20, 2009, before the market opened, defendants announced Regions reported *a net loss of $5.6 billion for the 4Q 08*, stating the loss "was largely driven by a *$6 billion non-cash charge for impairment of goodwill*." Regions' January 20th release also disclosed:

> -- *Accelerated disposition of problem assets*, with approximately $1 billion in non-performing assets sold or transferred to held for sale, *resulting in approximately $479 million of losses*
>
> -- *Net loan charge-offs rose to an annualized 3.19 percent of average loans*
>
> -- *Increased loan loss provision to $1.150 billion*, $354 million above net charge-offs; raised allowance for credit losses to 1.95 percent of loans

[Emphasis added.]

23.     On this news, Regions' stock plummeted from $6.07 per share on January 16, 2009 to $4.60 per share on January 20, 2009, a one-day decline of 25% on three times the average daily trading volume over the prior 30 days.

24.     If defendants' release were to be believed, the "results of goodwill impairment testing at the end of the fourth quarter [*suddenly*] indicated that the estimated fair value of Regions' banking reporting unit was less than its book value, *requiring a $6 billion non-cash charge*." But $6 billion impairments do not happen overnight and Regions had affirmatively but falsely stated quarter after quarter that its goodwill was not impaired and Regions' CEO and CFO certified each quarter those financial filings were accurate and that Regions' internal controls

- 15 -

were solid. The Regions' Board of Directors' Audit Committee and E&Y also reviewed and acquiesced in the Company's financial reports filed with the SEC and earnings releases and never required Regions to properly test the enormous amount of goodwill being carried on its books following the AmSouth acquisition. Each Regions director also signed the Company's false and misleading annual reports and the registration statement filed in connection with the April 2008 Offering. Yet defendants' statements that the value of goodwill on Regions' balance sheet attributable to the AmSouth Acquisition was not impaired were false and misleading. Instead, Regions' earnings had been overstated as a result of Regions' overvaluing of AmSouth's loan portfolio and an inadequate level of loan-loss reserves largely related to the outsized growth of its Florida loan portfolio and lack of adequate internal accounting controls.

25.     On January 20, 2009, *Bloomberg.com* issued an article entitled "Regions Plunges to 23-Year Low on $6.24 Billion Loss," which stated in relevant part,

> Regions fell $1.47 to $4.60 at 4 p.m., the lowest price since March 13, 1985. ***The bank has lost more than three-quarters of its market value in the past 12 months.***
>
> ***The lender almost tripled its reserves to cover bad debt to $1.15 billion in the fourth quarter from $358 million in the same period a year earlier. It had $1.7 billion in loans no longer collecting interest in the quarter.***

[Emphasis added.]

- 16 -

26.    On January 20, 2009, *TheStreet.com* issued an article entitled "Regions Dividend at Risk After Posting Loss," which stated in relevant part:

> The noncash goodwill impairment charge represented premiums paid for acquisitions over the years, which most large banks are continually assessing in the current troubled environment.

> Excluding the charge, Regions Financial's net loss would have been 35 cents a share, but even that exceeded the Thomson Reuters consensus estimate of an 8 cent-per-share loss for the fourth quarter.

> *   *   *

> At first glance, it may appear that Regions Financial's asset quality improved during the fourth quarter, since the nonperforming assets ratios dropped to 1.26% from 1.45% the previous quarter. ***But the main reason for the drop in nonperformers was a large increase in net loan charge-offs, with home builder and condominium loans comprising the bulk of the fourth-quarter loan losses.***

> *   *   *

> ***This means that if the pace of charge-offs continues at this level for the next few quarters, the company needs to continue its elevated levels of loan loss provisions, leading to more net losses.***

[Emphasis added.]

27.    On January 23, 2009, the *Birmingham Business Journal* issued an article entitled "Regions Financial's $6 billion write-down may start trend," which disclosed that Regions had lost considerable credibility in the investment community:

> ***In an in-depth report on Regions released earlier this month, Audit Integrity said the company's accounting practices are considered "aggressive" and the company is at high risk of restating its quarterly***

- 17 -

*earnings reports to account for losses it might not be disclosing in the present.*

The firm's rating system *found at least 10 red flags against Regions based on third quarter 2008 data and surmised that the company might be overvaluing its assets because of its large goodwill,* assuming lower than usual liability risks on its pension compensation and for its high noninterest income compared to noninterest expenses.

\* \* \*

*"Whether this (recent) write-down indicated that Regions has fully disclosed its risky or overstated assets is another question,"* Zwingli said.

*"Until we see the quality and transparency of their disclosures improve, we would continue to anticipate further write-downs and unrealized losses in the quarters ahead."*

[Emphasis added.]

28.   Rating agencies began slashing the Company's stock ratings.   On February 2, 2009, the *Birmingham Business Journal* issued an article entitled "Regions shares drop after Moody's downgrade," which stated in part:

Regions Financial Corp.'s share prices tumbled 15 percent in late afternoon trading Monday after Moody's Investor Service downgraded its ratings.

Regions Bank, the Birmingham-based titan's primary subsidiary, *was knocked down to a C+ from a B- and its long-term deposits dwindled to A2 from A1.*

\* \* \*

*The credit rating agency said the company had a "negative outlook," because of its deteriorating loan portfolios in the troubled Florida market.*

- 18 -

*"Net charge-offs for the fourth quarter of 2008 were nearly double that of the prior quarter and reflect a pace of asset quality deterioration beyond Moody's prior expectations,"* Moody said in a research note.

[Emphasis added.]

29.     The Company's annual financial report on Form 10-K filed with the SEC on February 29, 2009 further disclosed that as a result of the massive impairment, Regions' corporate debt ratings were being slashed – which threatens to significantly increase the Company's cost of borrowing on a going-forward basis:

> In February 2009, Regions Financial Corporation's senior notes, subordinated notes, and junior subordinated notes were downgraded to A3, Baa1, and Baa1, respectively, by Moody's, reflecting the Company's concentration in residential homebuilder and home equity lending, particularly in Florida.  Also, Moody's downgraded Regions Bank's long-term bank deposits, long-term debt, and subordinated debt to A2, A2, and A3, respectively.

30.     The Company's Form 10-K finally made explicitly clear how much damage the Florida loan portfolio was causing:

- As of December 31, 2008, residential homebuilder loans, home equity loans secured by second liens in Florida and condominium loans represented approximately 9.3% of our total loan portfolio.  *These portions of our loan portfolio have been under stress for over a year and, due to weakening credit quality, we increased our loan loss provision and our total allowance for credit losses.*  In addition, we have implemented several measures to support the management of these portions of the loan portfolio, including reassignment of experienced, key relationship managers to focus on work-out strategies for distressed borrowers.

- Net charge-offs totaled $1.5 billion, or 1.59 percent of average loans in 2008 compared to $270.5 million, or 0.29 percent of average loans in 2007.  The increased loss rate resulted from deteriorating economic conditions during 2008, especially related to the housing sector.   More specifically,

- 19 -

approximately $639.0 million of 2008 net charges-offs were related to non-performing loan dispositions or transfers to held for sale as compared to none in 2007. Non-performing assets increased $853.9 million between December 31, 2007 and December 31, 2008 to $1.7 billion, primarily due to continued weakness in the Company's residential homebuilder portfolio, which began experiencing significant pressure toward the end of 2007. ***This pressure was due to a combination of declining residential real estate demand and resulting price and collateral value declines in certain of the Company's markets, particularly areas of Florida and Atlanta, Georgia. Condominium loans, mainly in Florida, were also a driver of the increase in non-performing assets.*** Regions aggressively managed its exposure to its most stressed assets by selling or transferring to held for sale approximately $1.3 billion of non-performing loans during 2008. Non-performing assets held for sale totaled $423.3 million at December 31, 2008.

- The majority of Regions' home equity lending balances was originated through its branch network and the Company has not purchased broker-originated or other third-party production. However, home equity losses still increased significantly in 2008, impacted by the unprecedented drop in real estate values coupled with a deteriorating economy. ***The main source of stress has been in Florida, where home values declined precipitously in 2007 and 2008. Further, losses on relationships in Florida where Regions is in a second lien position have been especially high; much higher, in fact, than the remaining areas of Regions geographic footprint.***

- Housing continued to weaken considerably throughout 2008 and the risk of a deepening recession is significantly increasing due to the negative impact housing is having on the overall economy. ***Within the Regions footprint, the housing slowdown has been modest in some areas and severe in Florida and selected other geographical areas, including Atlanta, Georgia. Florida has experienced above-average price increases and construction activity in recent years.*** The slowdown is evident in many areas, including steeply declining sales and prices, and high levels of excess unsold inventory on the market. Management anticipates that the housing industry will remain weak throughout 2009. ***Housing-related issues have been exacerbated by a sharp increase in unemployment across Regions' footprint, particularly in Florida.***

- Residential First Mortgage – The residential first mortgage portfolio contains one-to-four family residential properties, which are secured principally by single-family residences. Loans of this type are generally smaller in size and

are geographically dispersed throughout Regions' market areas, with some guaranteed by government agencies or private mortgage insurers. Losses on the residential loan portfolio depend, to a large degree, on the level of interest rates, the unemployment rate, economic conditions and collateral values. During 2008, losses on single-family residences totaled 0.50 percent, 38 basis points higher than in the previous year, primarily driven by declining property values and other influential economic factors, such as the unemployment rate, which deteriorated substantially as the year progressed. ***Deterioration of the Company's residential first mortgage portfolio was most apparent in Florida, where property valuations declined significantly and unemployment rose at a rapid pace.*** Regions expects losses on loans of this type to continue to increase during 2009, further driven by continued rising unemployment and the continued housing slowdown throughout the U.S., including areas within Regions' operating footprint.

- Home Equity – This portfolio contains home equity loans and lines of credit totaling $16.1 billion as of year-end 2008. Substantially all of this portfolio was originated through Regions' branch network. As a percentage of outstanding home equity loans and lines, losses increased in 2008 to 1.46 percent from 0.27 percent in 2007. ***The deteriorating economic environment as described above, particularly with respect to housing, caused the significant increase in loss rate. Florida real estate markets have been particularly affected. Slightly more than one-third of Regions' home equity portfolio is located in Florida and has suffered losses reflective of the falling property values and demand in that geography.***

- Net charge-offs on home equity credits were also a driver of the increase, rising to 1.46 percent in 2008 versus 0.27 percent in 2007. ***Losses from Florida-based credits were particularly high, as property valuations in certain markets continued to experience ongoing deterioration. These loans and lines represent approximately $5.8 billion of Regions' total home equity portfolio at December 31, 2008. Of that balance, approximately $2.1 billion represents first liens; second liens, which total $3.7 billion, were the main source of losses. Florida second lien losses were 3.67 percent in 2008. Total home equity losses in Florida amounted to 2.83 percent of loans and lines versus 0.73 percent across the remainder of Regions' footprint.***

- Loans past due 90 days or more and still accruing totaled $554.4 million as of year-end 2008, an increase of $197.7 million from year-end 2007 levels, and reflected weaker economic conditions and general market deterioration. ***The***

- 21 -

*increase was primarily due to increases in home equity and residential first mortgages, particularly in Florida, as well as commercial real estate loans being managed by the Special Assets Department and in the process of collection.*

- At December 31, 2007, non-performing assets totaled $864.1 million, or 0.90 percent of ending loans, compared to $379.1 million, or 0.40 percent of loans, at December 31, 2006.  The increase in non-performing assets was largely influenced by growth in non-performing loans in the fourth quarter of 2007 due to weakness in the residential homebuilder portfolio. *This pressure was due to a combination of declining residential demand and resulting price and collateral value declines in certain of the Company's markets, particularly areas of Florida and Atlanta, Georgia.*

[Emphasis added.]

31.    Throughout the relevant period, the Individual Defendants subjected Regions to improper loan review processes, over-valued its loan portfolio and failed to maintain adequate loan-loss reserves which had a material adverse effect on Regions' operating results.  By failing to report the true facts concerning the Company's grossly inflated loan portfolio, the publicly-distributed financial reports the Individual Defendants caused and/or permitted Regions to issue and file with the SEC failed to provide investors with the basic information necessary to understand Regions' financial results and omitted material information, rendering them materially false and misleading.  As a result, Regions is now exposed to hundreds of millions of dollars in potential civil liability in shareholder class actions, an SEC investigation, hundreds of millions of dollars in expenditures to investigate and

defend accounting impropriety charges, and significant harm to the Company's reputation and standing in the business and financial communities.

32.    The true facts, which were known by the defendants but concealed from the investing public during the relevant period, and/or were omitted from the April 2008 Prospectus and the Merger Proxy, were as follows:

(a)    AmSouth's decision to "double" its presence in the over-stimulated Florida real estate lending market between 2004 and 2006, coupled with AmSouth's lack of experience lending and servicing adjustable rate mortgages and the fact that it was keeping these loans on its own books rather than repackaging them and selling them to other investors, significantly increased the risk associated with the AmSouth assets and diminished AmSouth's (and then Regions') ability to accurately calculate adequate loan loss reserves;

(b)    AmSouth had failed to adequately reserve for mortgage-related exposure, causing its balance sheet and financial results to be artificially inflated;

(c)    The five days the Individual Defendants permitted Regions' executives and financial advisors to conduct due diligence on the AmSouth acquisition was woefully deficient, rendering the fairness opinion by Merrill Lynch false and misleading;

(d)    The $11+ billion in "goodwill" the Individual Defendants and E&Y had caused Regions to continue carrying on its books from the inception of the

- 23 -

AmSouth Acquisition on November 4, 2008 was grossly impaired (including the over $6 billion worth attributable to the AmSouth Acquisition);

(e)     The Individual Defendants and E&Y were failing to write down Regions' impaired goodwill post-Acquisition, causing the Company's balance sheet and financial results to be artificially inflated;

(f)     The Individual Defendants and E&Y failed to cause Regions to accurately and timely identify over $1 billion in "problem" and "non-performing assets";

(g)     The Individual Defendants and E&Y caused Regions to fail to accurately and timely increase its loan loss provision by at least $1 billion during the Relevant period or to raise its allowance for credit losses as prudent accounting would have required;

(h)     The AmSouth integration was not proceeding successfully;

(i)     The value of the funds managed by Regions' subsidiary Morgan Keegan were overstated due to being laden with undisclosed subprime investments and potential ARS liabilities, exposing Morgan Keegan – and Regions – to hundreds of millions of dollars in potential civil liability and an SEC enforcement action;

(j)     The Individual Defendants were causing Regions to operate with woefully deficient internal controls, resulting in the Company improperly reporting its loan loss reserves and goodwill; and

- 24 -

(k)    The Individual Defendants were causing Regions' capital base to dwindle to the point that it was not able to withstand the significant deterioration in the real estate market and, as a result, Regions was forced to raise additional capital by seeking assistance from the U.S. Government.

33.    As a result of the Individual Defendants', E&Y's and Merrill Lynch's false statements to the investing public, Regions' stock traded at inflated levels during the Relevant period, it raised $345 million in the April 2008 Offering and the AmSouth Acquisition was completed.  However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down more than 85% from their relevant period high.

34.    Due to the Individual Defendants', E&Y's and Merrill Lynch's failure to timely disclose these material facts, a number of investors have sued the Company in class action lawsuits.  These class action lawsuits allege various violations of federal securities laws, including violations of Sections 11, 12(a)(2) and Section 15(a) of the 1933 Securities Act.  Because of the Individual Defendants', E&Y's and Merrill Lynch's misconduct, Regions is exposed to hundreds of millions of dollars in potential civil fines and penalties, and hundreds of millions of dollars in costs to defend lawsuits and satisfy adverse judgments or settlements.  Moreover, as a direct and proximate result of the defendants'

misconduct, Regions' once-valuable banking enterprise and reputation has been irreparably diminished and its own good name has been forever tarnished.

35. Immediately thereafter, with shareholders still incensed about the ruin visited upon Regions, in February 2009, defendants openly defied the TARP restrictions. Specifically, upon accepting the TARP funds, the Company became obligated to comply with a number of executive compensation standards during the period of time in which the U.S. Government (*i.e.*, its taxpayers) hold an equity position in Regions, including four initial standards, which applied to Regions' CEO, CFO and the three next highest paid executive officers: (a) limits on severance payments to senior executive officers; (b) *a requirement that Regions "clawback" bonuses, retention awards and incentive compensation paid to senior executive officers if they were based on materially inaccurate financial statements or any other materially inaccurate performance metric criteria (whether or not the executive was at fault, any misconduct occurred, or the financial statements were restated)*; (c) a requirement that the Compensation Committee review senior executive officer compensation programs with its senior risk officers and certify that the Company has made reasonable efforts to ensure that the incentive compensation arrangements do not encourage unnecessary and excessive risks that threaten its value; and (d) a prohibition against Regions' taking a tax deduction for annual compensation over $500,000. Thereafter, additional compensation standards

- 26 -

were enacted pursuant to the American Recovery and Reinvestment Act of 2009 ("ARRA") passed February 17, 2009 that Regions, as a TARP recipient, was required to comply with. These standards extended beyond the Company's senior executive officers and applied to up to the next 20 most highly-compensated employees and included: (a) a prohibition against severance payments to Regions' senior executive officers and the next five most highly-compensated employees, other than payments for services performed or benefits accrued; (b) a prohibition on bonuses, retention awards, and other incentive compensation to any senior executive officer or any of the next 20 most highly-compensated employees subject to certain limited exemptions; (c) a stricter clawback provision extending to the next 20 most highly-compensated employees in addition to the senior executive officers; and (d) a prohibition on adopting or implementing any compensation plan that would encourage manipulation of the reported earnings of the Company in order to enhance the compensation of any of its employees.

36.    Turning these principles on their heads, in addition to failing to increase Regions' risk controls, to recalibrate its compensation policies or to effect a clawback of incentive compensation and bonuses, in February 2009, Regions' Compensation Committee:  (i) left Ritter's annual salary at $995,000, Esteves' annual salary at $575,000, and Hall's annual salary at $675,000, all well above the $500,000 ceiling established, resulting in a substantial increase in Region's federal

tax liability; (ii) paid certain senior executives a "merger cost savings performance" **bonus**, including granting Ritter more than $1 million worth of restricted stock (on top of the approximately $4 million worth of stock options and restricted stock units he received during fiscal 2008), paying Esteves a $1 million cash bonus, paying Hall a $495,910 bonus (on top of the $1.2 million worth of stock options he received during fiscal 2008), and paying senior Regions' executives David Edmonds ("Edmonds") and William Wells ("Wells") $241,110 and $253,800, respectively, in bonuses; (iii) granted Ritter an additional 22,789 shares of "service-based restricted stock . . . ***in recognition of his performance in leading the Company through the successful merger with AmSouth***"; (iv) in connection with the January 2009 promotion of William Ritter, the son of Dowd Ritter, to senior executive vice president and president of the central region, covering Alabama, Georgia and South Carolina, in January 2009, William Ritter was granted a salary increase to $350,000, $350,000 worth of stock options or restricted stock, received a bonus of 43% of his salary for 2008 and is purportedly is in line to receive a bonus of 90% of his new salary in 2009; and (v) granted a variety of perks ***including the provision of a corporate jet for Ritter (for both personal and professional travel)***, and offering all executives financial planning services, Company-paid excess liability policies, Company-provided security coverage for private residences and enhanced coverage for annual routine physicals.  By these decisions, Regions'

- 28 -

shareholders are being penalized twice: as the Company's equity owners, they pay

the ultimate price for defendants' misconduct, and then they must pay bonuses on

top of handsome salaries – despite the TARP guideline prohibitions against it.

37.     On May 7, 2009, *Reuters* announced the results of Regions' "stress

test" required following its receipt of TARP funds:

> Regions Financial Corp has a $2.5 billion capital shortfall according to
> the U.S. government's stress test.
>
> A summary of the results under the government's most adverse scenario
> is below. Estimated losses are for 2009 and 2010.
> (All figures are in billions unless otherwise specified)

| | |
|---|---|
| Total estimated losses | $9.2 |
| Losses from first lien mortgages | $1.0 |
| Losses from second/junior lien mortgages | $1.1 |
| Losses from commercial and industrial loans | $1.2 |
| Losses from commercial real estate | $4.9 |
| Losses from credit card loans | n/a |
| Losses from securities marked as available-for-sale or held-to-maturity | $0.2 |
| Losses from trading and counterparty | n/a |
| Losses from other areas | $0.8 |
| Resources other than capital to absorb losses | $3.3 |
| ***Indicated additional net Tier 1 common/contingent common buffer*** | ***$2.5*** |

38.     Thereafter, on May 11, 2009, Regions disclosed the SEC may launch a

civil proceeding against the Regions' Morgan Keegan & Co brokerage unit over the

alleged improper sale of auction-rate securities.  In its quarterly report filed with the

SEC, Regions said the regulator filed a "Wells Notice" in March 2009 against

Morgan Keegan. Regions said the SEC is investigating the adequacy of Morgan

Keegan's disclosures of liquidity risks associated with auction-rate debt, and whether it sold a large volume of the debt after its ability to support the auctions was diminished.

39.   Finally, on May 19, 2009, the *Memphis Business Journal* reported that the Company would have to conduct a very dilutive stock offering and sell assets to bring the Company's capital up to the levels being required by the U.S. government:

> Regions Financial Corp. plans to raise $1.25 billion in a stock offering to help meet the U.S. government's demands to raise more capital if the economy worsens.

> The Birmingham banking giant plans to pony up $1 billion via a common stock offering and another $250 million in new mandatory convertible preferred shares.  If raised, the money would account for only half of the $2.5 billion the company needs to bolster its capital reserves, a requirement set by the federal government after results of its "stress tests" predicted the bank could suffer from $9.2 billion in loan losses given the worst-case scenario.

> Regions also plans to sell certain businesses, exchange equity for Regions Bank's $4.25 billion of outstanding subordinated debt and $345 million of additional trust preferred securities to come up with the rest of the money, the bank said in a written statement.

40.   The defendants each owed and failed to carry out their fiduciary obligations to the Company and its shareholders.  This shareholder derivative action on behalf of Regions seeks to recover damages caused to the Company by its directors, CEO and senior officers, outside auditors and financial advisors who breached their fiduciary obligations to the Company.  Because of the gross dereliction of duty alleged and the fact that a majority of the members of Regions'

- 30 -

Board of Directors are potentially liable for the misconduct alleged, demand on the Regions Board would be futile and has not been made.

## JURISDICTION

41.     This Court has jurisdiction pursuant to Sections 12-11-30 and 12-11-31 of the Code of Alabama.

42.     Venue is proper in this County because Regions is headquartered in this County and a substantial portion of the transactions and wrongs complained of herein occurred in this County.

## THE PARTIES

43.     Plaintiff, Louisiana Municipal Police Employees Retirement System, is and was a shareholder of nominal defendant Regions at relevant times.

**Regions**

44.     Nominal party Regions Financial Corp. is a Delaware corporation. Post-Acquisition, the combined entity is a financial holding company which operates throughout the South, Midwest and Texas. Regions provides traditional commercial, retail and mortgage banking services, as well as other financial services in the fields of investment banking, asset management, trust, mutual funds, securities brokerage, insurance and other specialty financing.  On December 31, 2007, Regions reportedly had total consolidated assets of approximately $141.0 billion, total consolidated deposits of approximately $94.8 billion and total

- 31 -

consolidated stockholders' equity of approximately $19.8 billion.   Regions' common stock trades on the NYSE under the symbol "RF," and its principal executive offices are located at 1900 Fifth Avenue North, Birmingham, Alabama.

**The Individual Defendants**

45.     Defendant C. Dowd Ritter ("Ritter") has served as Regions' President, CEO and a director since the Acquisition. Ritter has also served as Regions' Chairman of the Board of Directors since Moore resigned the chairmanship in January 2008.  Prior to the Acquisition, Ritter had served as President and CEO of AmSouth and AmSouth Bank and Chairman of the Board of AmSouth Bank since 1996. Ritter had served as chairman of the AmSouth board from September 1996 to October 1999 and from January 2001 through the Acquisition.  Defendant Ritter signed the false and misleading April 2008 Prospectus, the Merger Proxy Statement, the FY 2006 and 2007 annual financial reports, all 2007 and 2008 interim financial reports and the Sarbanes-Oxley certifications that accompanied those financial statements.

46.     Defendant Jackson W. Moore ("Moore") served as Regions' Executive Chairman of the Board from January 2007 to December 2007; Chairman of the Board from May 2006 to January 2007; CEO from July 2005 to November 2006; CEO Designate from July 2004 to July 2005; and President from July 2004 to November 2006.  Moore also served as a Regions director from 1986 to December

- 32 -

2007. Defendant Moore signed the false and misleading April 2008 Prospectus, the Merger Proxy Statement and the FY 2006 annual financial report.

47.    Defendant Irene Esteves ("Esteves") is, and has been since April 1, 2008, the Chief Financial Office ("CFO") of Regions. Esteves signed the false and misleading April 2008 Prospectus, the 2008 interim financial reports for the first three quarters of 2008 and the Sarbanes-Oxley certifications that accompanied those financial reports.

48.    Defendant Alton E. "Al" Yother ("Yother") was CFO of Regions from April 13, 2007 until April 1, 2008.  Yother signed the false and misleading April 2008 Prospectus, the 2007 annual financial report, all interim financial reports for the first three quarters of 2007, and the Sarbanes Oxley certifications that accompanied them.

49.    Defendant Bryan Jordan ("Jordan") was CFO of Regions from December 19, 2002 until April 1, 2007.  Jordan signed the false and misleading April 2008 Prospectus, the Merger Proxy Statement and the 2006 annual financial report and the Sarbanes-Oxley certification that accompanied that report.

50.    Defendant Ronald C. Jackson ("Jackson") was Regions' Comptroller from 2003 to at least January 2007; Senior Vice President from 1998 to at least January 2007; Director of Investor Relations from 1995 to at least April 2002;

- 33 -

Assistant Comptroller in 1996; and an Analyst in 1994.  Jackson signed the false and misleading Merger Proxy Statement.

51.    Defendant Richard D. Horsley ("Horsley") was Regions' Vice Chairman of the Board from 1982 to November 2006; Head of Transactions & Integration from November 2006 to December 2006; CEO, Business Enterprises from July 2005 to at least April 2006; Chief Operating Officer from December 2002 to July 2005; and Executive Financial Officer from 1982 to December 2002. Horsley was also a Regions director from 1982 to November 2006.  Horsley signed the false and misleading Merger Proxy Statement.

52.    Defendant Allen B. Morgan, Jr. ("Morgan") is Regions' Chairman Emeritus and has been since December 2007.  Morgan is also a director of various Regions-Morgan Keegan ("RMK") Strategic Income funds and has been since 2003.  Morgan was Morgan Keegan's Chairman of the Board from 1969 to December 2007 and CEO from 1969 to 2003. Morgan was also Regions' Vice Chairman of the Board from 2003 to December 2007 and a director from 2001 to December 2007.  Morgan signed the false and misleading Merger Proxy Statement and 2006 annual financial report.

53.    Defendant Samuel W. Bartholomew, Jr. ("Bartholomew") has served as a director of Regions (or Union Planter before it was acquired by Regions) since 2001.  Bartholomew is also a member of Regions' Risk Committee and has been

since 2007.  Bartholomew signed the false and misleading April 2008 Prospectus and the Merger Proxy Statement.

54.   Defendant George W. Bryan ("Bryan") has served as a director of Regions (or Union Planter) since 1986.  Bryan is also a member of Regions' Compensation Committee and has been since at least 2006.  Bryan signed the false and misleading April 2008 Prospectus and the Merger Proxy Statement.

55.   Defendant Margaret H. Greene ("Greene") served as a Regions director from 2002 to November 2006.  Greene was also a member of Regions' Risk Committee in 2006.   Greene signed the false and misleading Merger Proxy Statement.

56.   Defendant Susan W. Matlock ("Matlock") has served as a Regions director since 2002.   Matlock is also a member of Regions' Compensation Committee and has been since at least 2006.   Matlock signed the false and misleading April 2008 Prospectus and the Merger Proxy Statement.

57.   Defendant Jorge M. Perez ("Perez") served as a Regions director from 2001 through 2008.  Perez was also a member of Regions' Risk Committee in 2006. Perez signed the false and misleading 2008 Prospectus and the Merger Proxy Statement.

58.   Defendant John R. Roberts ("Roberts") has served as a Regions director since 2001. Roberts is also a member of Regions' Audit Committee and has

been since at least 2006 and was a member of Regions' Risk Committee in 2006. Roberts signed the false and misleading April 2008 Prospectus and the Merger Proxy Statement.

59.     Defendant Michael S. Starnes ("Starnes") served as a Regions director from 2001 to November 2006. Starnes was also a member of Regions' Compensation Committee in 2006. Starnes signed the false and misleading Merger Proxy Statement.

60.     Defendant Lee J. Styslinger, III ("Styslinger") has served as a Regions director since 2003. Styslinger is also a member of Regions' Audit Committee and has been since at least 2006. Styslinger signed the false and misleading April 2008 Prospectus and the Merger Proxy Statement.

61.     Defendant Robert R. Waller ("Waller") was a Regions director from 2001 to April 2007. Waller signed the false and misleading Merger Proxy Statement.

62.     Defendant Spence L. Wilson ("Wilson") served as a Regions director from 1996 to 2008. Wilson had also served as a member of Regions' Risk Committee and has been since at least 2006 and was Chairman of Regions' Risk Committee in 2006. Wilson signed the false and misleading April 2008 Prospectus and the Merger Proxy Statement.

63.     Defendant Harry W. Witt ("Witt") served as a Regions director from 2002 to April 2008. Witt was member of Regions' Audit Committee from at least 2006 to 2007.  Wilson signed the false and misleading April 2008 Prospectus and the Merger Proxy Statement.

64.     Defendant O.B. Grayson Hall, Jr. ("Hall") has been an executive director of Regions since 2008.  Since December, 2008 Hall has served as Vice Chairman and Head of the General Bank Group of Regions Financial Corporation and Regions Bank.  He was previously the Senior Executive Vice President, General Bank Group of Regions and Regions Bank and, prior to the Acquisition, Senior Executive Vice President and Lines of Business/Operations and Technology Group Head of AmSouth Bancorporation and AmSouth Bank.

65.     Defendant Earnest W. Deavenport, Jr. ("Deavenport") has been a Director of Regions since November 2006 and, prior to the Acquisition, was a director of AmSouth since 1999.  Deavenport serves on the Compensation Risk Committees.  Deavenport signed the false and misleading April 2008 Prospectus and the FY 2006 and 2007 annual financial reports.

66.     Defendant David J. Cooper Sr. ("Cooper") has been a Director of Regions since November 2006 and, prior to the Acquisition, was a director of AmSouth since 2005.  Cooper signed the false and misleading April 2008 Prospectus and the FY 2006 and 2007 annual financial reports.

- 37 -

67.    Defendant Donald DeFosset ("DeFosset") has been a Director of Regions since November 2006 and, prior to the Acquisition, was a director of AmSouth since 2005. DeFosset serves on the Audit Committee. DeFosset signed the false and misleading April 2008 Prospectus and the FY 2006 and 2007 annual financial reports.

68.    Defendant James R. Malone ("Malone") has been a Director of Regions since November 2006 and, prior to the Acquisition, was a director of AmSouth since 1994. Malone serves on the Risk Committee. Malone signed the false and misleading April 2008 Prospectus and the FY 2006 and 2007 annual financial reports.

69.    Defendant Charles D. McCrary ("McCrary") has been a Director of Regions since November 2006 and, prior to the Acquisition, was a director of AmSouth since 2001. McCrary serves on the Audit Committee. McCrary signed the false and misleading April 2008 Prospectus and the FY 2006 and 2007 annual financial reports.

70.    Defendant Claude B. Nielsen ("Nielsen") has been a Director of Regions since November 2006 and, prior to the Acquisition, was a director of AmSouth since 1993. Nielsen serves as chair of the Compensation Committee. Nielsen signed the false and misleading April 2008 Prospectus and the FY 2006 and 2007 annual financial reports.

71.     Defendant Dr. John E. Maupin Jr. ("Maupin") has been a Director of Regions since 2007.  Maupin signed the false and misleading 2007 annual financial report.

72.     Defendant William C. Wells, II ("Wells"), is Senior Executive Vice President, Chief Risk Officer and Head of Risk Management Group of Regions Financial Corporation and Regions Bank and, prior to the Acquisition, served as Senior Executive Vice President, Chief Risk Officer and Head of Risk Management Group at AmSouth Bancorporation and AmSouth Bank, Executive Vice President and Chief Risk Officer, SouthTrust Corporation, and Senior Vice President of Loan Review, Compliance, Community Reinvestment and Retail Risk Assessment, SouthTrust Corporation and SouthTrust Bank.

73.     The defendants referenced above in ¶¶45-72 are referred to herein as the "Individual Defendants."

**E&Y**

74.     Defendant Ernst & Young LLP ("E&Y") served as both Regions' and AmSouth's outside auditors and provided accounting services for Regions and AmSouth prior to, in connection with, and after the Acquisition, which included "clean" or "unqualified" opinions on Regions' and AmSouth's 2005, 2006 and 2007 annual audited financial statements.  E&Y also reviewed and approved the unaudited financial statements of Regions and AmSouth issued in connection with

the April 2008 Offering and the Acquisition. In the Merger Proxy Statement, E&Y

expressly consented to: (i) its inclusion as an "Expert"; (ii) the incorporation by

reference of its reports of March 3, 2006 with respect to the consolidated financial

statements of Regions and AmSouth and their management's assessment of the

effectiveness of their internal control over financial reporting and the effectiveness

of their internal controls over financial reporting; (iii) the incorporation by reference

of Regions' and AmSouth's FY 2005 reports on Form 10-K; and (iv) the

incorporation by reference of E&Y reports dated May 5, 2006 and August 4, 2006,

relating to the unaudited consolidated interim financial statements of AmSouth that

were included in its Forms 10-Q for the quarters ended March 31, 2006 and June

30, 2006. E&Y was not independent with respect to the Acquisition, as it was the

auditor for both Regions and AmSouth and had been promised it would be the

auditor/accountant for the gigantic new Company – Regions – after the Acquisition

and thus would garner huge amounts of accounting, auditing and consulting fees

post-merger for years to come. This was critical as Regions was the E&Y's

Birmingham office's biggest pre-Acquisition customer, with Regions paying E&Y

$4.7 million, $5.5 million and $3.8 million for audit, tax and other services in FY

2005, 2004 and 2003, respectively. AmSouth was one of its next largest accounts,

paying E&Y $2.4 million, $2.4 million and $1.5 million for audit, tax and other

services in 2005, 2004 and 2003, respectively. Retaining Regions as a client post-

- 40 -

Acquisition was critical as E&Y-Birmingham had lost its previous largest audit account, HealthSouth, when that company imploded in its own financial fraud in 2003. The combined Regions entity would reciprocate, eventually paying E&Y more than $5.8 million in auditing, tax and other services for FY 2006 and over $7.2 million for FY 2007. E&Y-Birmingham is also housed in The Regions-Harbert Plaza, Regions' 32-story headquarters previously known as AmSouth-Harbert Plaza.

75.    E&Y consented to the use of its prior unqualified audit opinions of AmSouth in the April 2008 Prospectus and the Merger Proxy Statement. E&Y also issued unqualified audit opinions throughout the relevant period, certifying that Regions' post-Acquisition financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP") for fiscal 2006 and 2007, and the first three interim financial periods for FY 2008, and that E&Y's audits of such financial statements had been performed in accordance with Generally Accepted Auditing Standards ("GAAS"), knowing they had not. As a result, E&Y knew, or recklessly disregarded, that the value of the goodwill being reported in connection with the April 2008 Offering and the Acquisition and throughout the relevant period was materially overstated. In addition, E&Y knew, or recklessly disregarded, that its audits were not performed in accordance with GAAS.

- 41 -

76.     E&Y knew of, or was recklessly indifferent to, the true value of the goodwill being attributed to AmSouth in the April 2008 Prospectus and the Merger Proxy Statement and in Regions' post-Acquisition financial reports was materially inflated, including the fact that AmSouth's Florida loan portfolio was grossly overvalued.  Nonetheless, E&Y consented to the incorporation of AmSouth's FY 2005 audited financial report in the Merger Proxy Statement and continued issuing unqualified audit opinions for Regions' financial statements that continued including the inflated goodwill throughout the relevant period.

**Merrill Lynch**

77.     Defendant Merrill Lynch is an investment banking firm headquartered in New York, New York.  Merrill Lynch was acquired by Bank of America in June 2008.  Merrill Lynch acted as financial advisor to Regions in connection with the Acquisition.  Merrill Lynch not only acted as advisor to Regions in connection with this transaction, but also rendered a false opinion contained in the Proxy Statement that the consideration to Regions was fair.  In return for its participation in the scheme, including knowingly rendering its false and misleading fairness opinion and for participating in writing the false and misleading Proxy Statement, Merrill Lynch received a substantial fee.  Merrill Lynch was also promised additional investment banking work from Regions, which, as promised, included serving as a Joint Book Runner Manager in Regions' April 2008, $345 million 8.875% Trust

- 42 -

Preferred Securities offering, with Merrill Lynch receiving over $1.4 million in underwriting fees; serving as a Joint Book Running Manager in Regions' May 2007, $350 million Floating Rate Senior Notes due 2012 offering, with Merrill Lynch receiving at least $490,000 in underwriting fees; and serving as a Joint Book Running Manager in Regions' May 2007 $700 million 6.625% Trust Preferred Securities offering, with Merrill Lynch receiving at least $1.4 million in underwriting fees.

78.    Merrill Lynch was motivated to enhance its business prospects and interests by concealing the truth about the Company's financial condition. AmSouth was a rapidly growing, major participant in the burgeoning Florida real estate finance business. Merrill Lynch was hired by the Individual Defendants to render a fairness opinion with respect to the AmSouth Acquisition and then to serve as an underwriter in the April 2008 Offering. Merrill Lynch was motivated to maintain its employment and good relations with Moore, Ritter and the other Individual Defendants in order ensure it would continue getting the combined Regions/AmSouth investment banking work and so that it could maintain its relationship with Morgan Keegan, with whom it served as co-lead managing underwriters in various financial transactions.

79.    Merrill Lynch issued an opinion included in the August 2006 Proxy Statement to the effect that the transaction described therein was fair and the

consideration to be paid by Regions for AmSouth was adequate. Merrill Lynch knew of, or was recklessly indifferent to, the true value of AmSouth prior to the preparation of the Proxy Statement, including the fact that AmSouth's Florida loan portfolio was grossly overvalued, and knew or was reckless in not knowing that the opinion it rendered was false and misleading. Merrill Lynch also served as an underwriter in the April 2008 Offering knowing that the April 2008 Prospectus was materially false and misleading.

## DEFENDANTS' FIDUCIARY DUTIES

80.     By reason of their positions as officers, directors and/or fiduciaries of Regions and because of their ability to control the business and corporate affairs of Regions, the Individual Defendants owed Regions and its shareholders fiduciary obligations of care, candor, compliance, fidelity, trust, loyalty and due care, and were, and are, required to use their utmost ability to control and manage Regions in a fair, just, honest and equitable manner, and were, and are, required to act in furtherance of the best interests of Regions and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

81.     Each director and officer of the Company owes to Regions the fiduciary duty to comply with the laws of the United States and to exercise due care and diligence in the administration of the affairs of the Company and in the use and

preservation of its property and assets, and the highest obligations of good faith and fair dealing.

82.     In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to the Company's finances and operations, and defendants also had an obligation not to entrench themselves as officers and/or directors of the Company, to allow open and honest board elections and to not advance their own personal, financial or economic interests over and at the expense of the Company's public shareholders.

83.     The Individual Defendants, because of their positions of control and authority as directors or officers of Regions, were able to and did, directly and indirectly, control the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial, and directorial positions with Regions, each of the Individual Defendants had access to all non-public information about the financial condition, operations and future business prospects of Regions, including, without limitation, the illegal and improper activities which the Individual Defendants caused Regions to engage in.

84.     To discharge their duties, the officers and directors of Regions were required to exercise reasonable and prudent supervision over the management,

- 45 -

policies, practices and controls of the financial and operational affairs of Regions. By virtue of such duties, the officers and directors of Regions were required, among other things, to:

(a)    Manage, conduct, supervise and direct the business and internal affairs of Regions in accordance with the laws and regulations of the United States, and pursuant to the charter and bylaws of Regions;

(b)    Neither violate nor knowingly permit any officer, director or employee of Regions to violate applicable laws, rules and regulations;

(c)    Remain informed as to the status of Regions' operations, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with applicable laws and regulations;

(d)    Establish and maintain systematic and accurate records and reports of the business and internal affairs of Regions and procedures for the reporting of the business and internal affairs to the Board of Directors and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)    Maintain and implement an adequate and functioning system of internal legal, financial and management controls, such that Regions' operations would comply with all laws, Regions' financial statements and information filed with U.S.

financial regulators and disseminated to the public and to Regions shareholders in
Annual Reports would be accurate and the actions of its directors would be in
accordance with all applicable laws; and

(f)    Exercise reasonable control and supervision over the public statements to
the securities markets, investors and public shareholders of Regions by the officers
and employees of Regions and any other reports or other information required by law
from Regions and to examine and evaluate any reports of examinations, audits or
other financial information concerning the financial affairs of Regions and to make
full and accurate disclosure of all material facts concerning, *inter alia*, each of the
subjects and duties set forth above.

85.    During all times relevant hereto, each of the Individual Defendants
occupied positions with Regions or was associated with the Company in such a
manner as to make him or her privy to confidential and proprietary information
concerning Regions, its operations, finances and financial condition.  Because of
these positions and such access, each of the Individual Defendants knew that the
true relevant facts specified herein had not been disclosed to and were concealed
from Regions' shareholders.  The Regions Defendants, as corporate fiduciaries
entrusted with non-public information, are obligated to disclose material
information regarding Regions and to take any and all actions necessary to ensure

- 47 -

that the officers and directors of Regions do not abuse their privileged positions of trust, loyalty and fidelity in a manner which causes the Company to violate the law.

## SUBSTANTIVE ALLEGATIONS

### AmSouth's Money Laundering Plea

86.     Beginning in 2000, AmSouth began permitting Louis Hamric, a practicing attorney, and Victor Nance, a registered representative for MONY Securities Corporation, to run a "Ponzi" scheme utilizing AmSouth custody accounts. In such a scheme, early investors are paid a "return" on their investments using monies obtained from later investors, thereby creating an appearance of successful investments and by so doing encouraging others to "invest" their money.

87.     As would later be revealed, in this particular scheme, the "investment" was a Promissory Note, issued by Hamric and held in an AmSouth custodial trust account which either Hamric or Nance established for each victim. AmSouth handled the administrative duties of the scheme by accepting "interest" payments from Hamric and depositing them into various custodial trust accounts based upon a spreadsheet provided by Nance. AmSouth also provided copies of the custodial trust account holders' bank statements to Hamric and Nance, on a quarterly basis, without the knowledge or consent of the account holders.

88.     As the United States Attorney for the Southern District of Mississippi would later charge, without the participation of AmSouth, the Hamric and Nance

- 48 -

fraudulent schemes would not have succeeded in defrauding over 60 investors of their savings.  According to the United States Attorney, AmSouth had a duty to recognize the Hamric/Nance schemes as suspicious activity and a duty to report this activity to federal authorities by filing Suspicious Activity Reports ("SAR").  Some of the Hamric Promissory Notes in these accounts promised to pay the investors as much as 25% per month.  Although such a note is suspicious on its face, AmSouth did not question the terms or nature of any of these notes.

89.     Furthering AmSouth's complicity, the SAR which it ultimately filed reporting the Hamric matter mischaracterized the suspicious activity as check fraud and understated the amount involved in the fraud.  Also, the SAR was filed nearly two years after the date that AmSouth initially detected or should have detected the suspicious activity.

90.     The MONY Ponzi scheme was not an isolated event.  In fact, on July 14, 2004, *USA Today* ran a story entitled "AmSouth's sales tactics draw fire in Mississippi," which detailed AmSouth's gritty brokerage activities.  The *USA Today* story disclosed in relevant part that:

> Jim Benson Moorehead, 44, used to toss investment sales pitches that way: soft, to the sweet spot.
>
> In this remote corner of a rural state, in a town of 22,000, Moorehead persuaded hundreds of small-town bank customers, including retired clergy and educators, to invest their savings through the brokerage subsidiary of his employer, AmSouth Bancorporation. *In 18 months on the job, Moorehead and AmSouth amassed more than $1 million in*

- 49 -

*commissions from about $15 million that bank customers placed with him.* He put most of the money into bank variable annuities, a controversial product that combines life insurance with mutual funds.

*Moorehead was rewarded with the AmSouth Chairman's Performance Award – the top honor at the $46 billion holding company – and a trip to Mexico.* But one of the great roaring stock markets in history was ending, cratering customers' portfolios.

And devastating allegations emerged about Moorehead, lodged by his sales assistant, which ended his career *and led to the first-ever joint investigation by state, federal and industry regulators of AmSouth.* The probes recently culminated in state sanctions against the bank and broker although Moorehead and AmSouth neither admitted nor denied wrongdoing.

### About AmSouth

* * * *

In an alleged binge of greed, fraud and forgery, Moorehead is accused by Mississippi authorities of pushing many elderly and unsophisticated clients into unsuitable investments, violating his legal obligation as a licensed broker to put their interests before his.

*Moorehead's excesses were far from isolated,* according to court documents and regulators' records, including confidential company e-mails and memoranda obtained by USA TODAY under the Mississippi Public Records Act. *The records and more than 50 interviews reveal that Moorehead exploited an aggressive, often-troublesome sales culture at AmSouth.*

* * * *

*The variable annuities Moorehead sold were costly and underperforming compared with many popular investments. They locked up customers' savings longer than many might have been expected to live. And in the midst of a collapsing stock market, the investments produced losses that ranged from hundreds to tens of thousands of dollars.*

- 50 -

Moorehead resigned in May 2001 after an internal hearing at the bank. Since then, dozens of former variable-annuities clients have presented damage claims, some of which AmSouth confidentially settled while it continues to dispute others.

* * * *

*By trying to pin blame solely on the broker . . . AmSouth overlooks a history of regulatory reprimands alleging lax supervisory and compliance procedures. Moreover, it stonewalled customers and regulators about its compliance failings in Starkville and at other offices*, the records and interviews show.

*Indeed, AmSouth heavily promotes high-commission investment products, often irrespective of customers' desire or suitability, according to the court documents, regulatory records and interviews.*

In May, the Mississippi secretary of state -- that state's securities regulator – fined Moorehead $10,000 and lifted his brokerage license for 10 years in a consent order that found Moorehead made unsuitable and unauthorized transactions for clients.

*In March, as an outgrowth of the Moorehead investigation, authorities in Mississippi and Alabama censured AmSouth's brokerage subsidiary, AmSouth Investment Services, and fined it $225,000.*

Not only had AmSouth "failed to reasonably supervise" Moorehead, state regulators found, but *AmSouth brokers at several other branches were not properly licensed; falsified customer records; failed to maintain other basic records and obstructed state examiners who investigated, a consent order decreed.*

"The terrible human tragedy," says Mississippi Assistant Secretary of State Jim Nelson, the state's chief securities cop, "is these folks in Starkville – Hometown, USA – these aren't Beverly Hills stars, these aren't Manhattan socialites. These are retired schoolteachers, retired Mississippi State University professors. These are good, hard-working, middle-class folks. They cannot afford to take this kind of loss."

'Land-office business'

On his first day of work in October 1999, at the Starkville branch of what then was First American Bank, Moorehead ventured uncertainly to his brokerage office next to the bank's "coffee club."

Newly licensed but without formal sales training by First American and with no sales brochures or prospectuses, Moorehead says, he relied on his bluff personality and the trust of bank customers and his parents' friends who came to see him.

Many clients were "coffee club" habitués who gathered at the bank, amid sunny views of Main Street, to talk about the day's obituaries, timber prices for southern yellow pine and the legendary Mississippi State baseball team.

"We would end up small-talking a lot," Moorehead says. "I would try to grasp their needs, and then I told them I would get back to them."

After a prospective client left, he says, he reached for a company hotline to seek investment advice and sales materials from more seasoned bank professionals. Three days of new-employee training he was promised at First American headquarters in Nashville were squeezed into lunch with the national sales manager.

**_"There was no training," Moorehead says._**

Handsome and popular, Moorehead need not have fretted about fitting into the job, or the town in which he was born and had left several years earlier. The bank president was his former Little League coach. Customers remembered him and his identical twin, Jack, as student managers of the college baseball team who had given away autographed balls, jerseys and game passes.

Everybody seemed glad to see Moorehead again. And sales at the bank dramatically quickened after AmSouth absorbed First American in early 2000. _**As the new owner, AmSouth installed an aggressive program of soliciting bank customers for its securities business, starting at the teller window and reaching to the branch president's desk, according to company documents and depositions.**_

AmSouth also instituted a cold-call sales program for branch personnel and ordered Moorehead and his assistant, Christy Wynne, now 27, a

- 52 -

former teller who joined him in May 2000, to scour maturing certificates of deposit for sales prospects . . . .

\* \* \* \*

***AmSouth's sales practices are a recurring target of securities regulators.***   The bank also is the subject of a federal criminal investigation involving a $15 million fraudulent note scheme by two former bank customers who have pleaded guilty in the case, according to AmSouth regulatory disclosures and interviews.  The probe seeks to establish why the bank failed to uncover the scheme.  In November 2003, the probe ensnared a former bank officer on charges of lying to a federal grand jury.  The former bank officer pleaded not guilty.  The bank denies wrongdoing.

***From 1994 to 1998, not a year passed that NASD or state authorities in Alabama and Florida did not censure AmSouth Investment Services, the brokerage subsidiary, for skirting securities regulations, including record keeping and suitability rules.***

In 1996, Florida attorney Jonathan Alpert filed a putative class-action lawsuit citing a consultant's finding that more than 75% of the company's brokers had failed to document customer-suitability requirements, 40% failed to disclose fees and commissions and 33% failed to follow compliance procedures.

\* \* \* \*

### Caught again

Alarmed by what Mississippi investigators uncovered in Starkville, Assistant Secretary of State Nelson persuaded the NASD and the SEC to conduct an unannounced sweep of eight AmSouth branches in three states in December 2002.  The Alabama Securities Commission joined the investigation.

The NASD boasts of more than 80 enforcement actions in the past two years on variable annuities abuses, some implicating major Wall Street firms and larger damages.  It has not disclosed its findings in the AmSouth case and would not comment for this story.

The SEC made no enforcement referrals as the result of its probe, state officials say they were told.

***Mississippi and Alabama, however, uncovered far more evidence of misconduct at AmSouth, including alleged criminal forgeries that Mississippi referred to the U.S. Attorney's office in Oxford, Miss . . . .***

In addition to finding that AmSouth "failed to reasonably supervise" Moorehead, state authorities say, they caught one variable annuities broker in Alabama filling out blank customer paperwork while another lied to investigators about his disciplinary history.

The states also found that AmSouth investment advisers at several branches failed to maintain accurate and complete records, failed to maintain and enforce written compliance procedures and did not respond to examiners' requests in a timely manner.

In a prepared statement, AmSouth spokesman Rick Swagler told this newspaper, "We cooperated with our regulators, reached a settlement with Mississippi and Alabama and paid our fine. We've made offers to every one of the broker's customers because we're committed to meeting our customers' needs with the right product. We didn't tolerate the broker's actions in 2001, and we wouldn't tolerate them today."

Yet AmSouth never publicly acknowledged the fraud at its Starkville branch, beyond accepting the states' joint consent decree. It never issued a formal apology or explanation to customers. And it has settled only some customer complaints, according to interviews with customers and regulators.

[Emphasis added.]

91.    However, following a lengthy investigation, on October 12, 2004 the United States Attorney for the Southern District of Mississippi and the Criminal Investigation Unit of the Internal Revenue Service announced that AmSouth Bancorporation and AmSouth Bank would forfeit $40 million to the United States as part of a Deferred Prosecution Agreement on charges of failure to report

suspicious financial activity in connection with the Hamric/Nance Ponzi scheme. According to the United States Attorney for the Southern District of Mississippi's October 12, 2004 release: ***"This is one of the largest forfeitures ever by a publicly traded bank."*** Victor Nance ultimately pled guilty to a money laundering charge and began currently serving a 10-year sentence. Hamric pled guilty to money laundering conspiracy.

92.    In connection with the charges, AmSouth waived indictment and agreed to the filing of a criminal Information in the U.S. District Court for the Southern District of Mississippi charging one count of failing to file SARs in violation of the Bank Secrecy Act. This Act requires banks to have anti-money laundering programs sufficient to identify and report suspicious financial transactions to the Financial Crimes Enforcement Network ("FinCEN"), a division of the U.S. Treasury Department. Banks must report suspicious financial transactions and other suspicious activity by filing SARs with FinCEN. The Information charges that AmSouth failed to file SARs in a timely manner, failed to file accurate SARs, and failed to file SARs at all with regard to suspicious financial transactions at AmSouth and its broker dealer subsidiary.

93.    In connection with its criminal plea, AmSouth also acknowledged its responsibility for initially failing to produce all documents responsive to numerous grand jury subpoenas it received from the grand jury investigating the

Hamric/Nance Ponzi scheme. AmSouth's in-house counsel assigned to respond to these subpoenas failed to produce from his own files documents which the government said "were clearly responsive to the subpoenas." The government also charged that AmSouth's in-house counsel was also aware or should have been aware of other AmSouth employees who had responsive documents, and he failed to gather and produce those documents as well -- as did AmSouth's employees. Through the course of the investigation, federal investigators obtained numerous AmSouth documents, including the bank statements of the account holders which were discovered in Hamric's office. AmSouth refused to produce any of these documents until it became the target of the criminal investigation itself.

94.    ***In exchange for a deferred prosecution agreement, AmSouth agreed to forfeit $40 million to the United States to settle the government's claims. Simultaneously with its agreement with the government, AmSouth was forced to pay a civil money penalty of $10 million to the Federal Reserve and $10 million to FinCEN, both of which would be satisfied by one payment of $10 million to the U.S. Department of the Treasury.*** Moreover, AmSouth was also forced to agree to "take whatever remedial actions are deemed necessary by its regulators, including the Board of Governors of the Federal Reserve System ("the Federal Reserve") and FinCEN."

- 56 -

95.   In connection with the United States Attorney's October 2004 announcement, U.S. Attorney Dunn Lampton stated that "the investigation conducted by [the] IRS and this office discovered that millions of dollars of fraud proceeds have been passed through AmSouth over the last several years.  AmSouth had a legal obligation to report these suspicious transactions, and it failed to do so."

96.   As observed by the *Kentucky Banker Magazine* on April 1, 2005, "[o]ne of the effects of [AmSouth's entry into the deferred prosecution agreement with the United States Attorney] (in addition to a $40 million forfeiture) ***is that the bank is prohibited from publicly defending itself***."

97.   In fact, despite having settled these criminal charges in October 2004, AmSouth was forced to concede in its annual financial report filed in early 2005 that the public relations nightmare was anything but over.  Instead, AmSouth's PR black eye would linger on for years and the bank would operate under a dark cloud of shame and suspicion:

> In October 2004, AmSouth entered into a deferred prosecution agreement with the U.S. Attorney for the Southern District of Mississippi relating to deficiencies in the Bank's reporting of suspicious activities under the Bank Secrecy Act.  At the same time, AmSouth entered into a cease and desist order with the Federal Reserve and the Alabama Department of Banking, as well as an order with the Financial Crimes Enforcement Network, relating to AmSouth's deficiencies in compliance with the Bank Secrecy Act.  Provided that AmSouth complies with the obligations under the deferred prosecution agreement for a period of twelve months, the U.S. Attorney has agreed not to take further action against the Company in connection with this matter.  ***The Federal Reserve has also indicated it will restrict the Company's expansion***

> *activities, including the branch expansion program, until such time as it believes that AmSouth is in substantial compliance with the requirements of the cease and desist order.  Pursuant to these agreements, AmSouth has taken additional actions to ensure compliance with the Bank Secrecy Act.  Among other things, these actions include independent third party reviews of all of the Company's activities related to compliance with the Bank Secrecy Act . . . .*

* * * *

> *It may take a number of years to fully and finally resolve the legal proceedings, including actions, claims and disagreements with regulators and law enforcement agencies, currently pending due to their complexity and for other reasons.  Further, in view of the inherent difficulty of predicting the outcome of such proceedings, AmSouth cannot state what the eventual outcome of these proceedings will be . . . .*

[Emphasis added.]

In fact, the Regions/AmSouth merger had been rumored on and off – with rumors of a possible deal surfacing in November 2005.  However, at that time, AmSouth was still attempting to work through its agreement with regulators to improve its Bank Secrecy Act and anti-money-laundering controls, which had also placed significant limits on AmSouth's own ability to expand when its plea agreement was entered into in October 2004.

### AmSouth's Overvalued Florida Real Estate Portfolio

98.   Prior to the Acquisition, Regions was a full-service provider of retail and commercial banking, trust, securities brokerage, mortgage and insurance products and services.  Regions reportedly had $86.1 billion in assets as of June 30, 2006, making it one of the nation's top 15 banks.  Regions' banking subsidiary,

Regions Bank, operated some 1,300 offices and a 1,600-ATM network across a 16-state geographic footprint in the South, Midwest and Texas.  Its investment and securities brokerage, trust and asset management division, Morgan Keegan, provided services from over 300 offices.  Regions was a member of both the *Forbes* and *Fortune* 500.

99.   Prior to the Acquisition, AmSouth was a regional bank holding company and a financial holding company with $53.9 billion in reported assets as of June 30, 2006, more than 680 branch banking offices and 1,200 ATMs.  AmSouth operated in Florida, Tennessee, Alabama, Mississippi, Louisiana and Georgia. AmSouth was a leader among regional banks in the Southeast in several key business segments, including consumer and commercial banking, small business banking, mortgage lending, equipment leasing, and trust and investment management services.

100.   The value the market was attributing to AmSouth's real estate lending business in August 2006, and thus to its stock price, ***based on certain of the Independent Defendants' statements,*** was materially overstated.  In particular, despite knowing the first rule of prudent real estate lending is to pull back activity in over-heated lending markets, as real estate prices escalated in 2004, especially in hot markets like Florida, AmSouth had done the opposite, setting a goal to "double Florida's contribution."  Moreover, according to its 2005 annual report incorporated

- 59 -

by reference into the Proxy Statement, AmSouth said it had "experienced a shift in customer preference toward variable-rate products" and decided "to retain a greater proportion of adjustable-rate residential mortgages on the balance sheet." Previously, AmSouth would have sold those loans into the secondary market. To fund the increased adjustable-rate lending, AmSouth sold its $550 million credit card portfolio in the fourth quarter of 2004. As a result of these changes, according to the Management's Discussion and Analysis ("MD&A") section of AmSouth's FY 2005 financial report, during FY 2005 AmSouth's "commercial loans secured by real estate increased $455.3 million or 20 percent due to increased construction activity and further penetration into AmSouth's Florida markets."

101.   Meanwhile, as the following Year-Over-Year change in home prices chart later complied for Miami (Southern Florida's biggest city) by Standard & Poor's/Case-Shiller (and published by *The New York Times*) would demonstrate in vivid detail that by the end of FY 2005, Florida's housing prices had dramatically increased by more than 150% of their level at the end of FY 2003, and were exceeding Case-Shiller's 20-city average by almost that amount at the end of FY 2005:



102.  Nonetheless, the MD&A section in AmSouth's 2005 annual report indicated that AmSouth had lowered its "loan and lease loss provision [for FY 2005], *primarily due to improved credit quality*," resulting in "increased earnings in 2005."  The MD&A to AmSouth's FY 2005 annual financial report also claimed that "[c]redit quality showed further improvement during 2005 *as evidenced by the reduction in net charge-offs*," that the "improvement in credit performance reflects . . . *the benefit of tighter underwriting of home equity and indirect loans*," that "[e]fforts associated with AmSouth's strategic initiative *to grow Commercial Banking with improved credit quality* were the primary driver of commercial and commercial real estate loan growth," and that the "credit quality of home equity originations during 2005 *remained high*."  Finally, the MD&A to the FY 2005 annual report expressly stated that "regular reports [were] made to Senior

Management, the Board of Directors and the Risk Committee of the Board regarding the credit quality of the loan portfolio *as well as trends in the portfolio*."

103.   What AmSouth's FY 2005 annual report concealed was that in its quest to dramatically increase its presence in Florida's booming real estate market, AmSouth, which had little experience servicing large loan portfolios, much less large portfolios of adjustable-rate mortgages, had significantly lowered it underwriting standards, chasing growth markets and attracting the loans that other banks were avoiding.   Despite strong market indicators that history and logic informed AmSouth that the Florida real estate market was overbuilt and over-heated, AmSouth failed to pull back and instead pushed on, continuing its rabid foray into Florida.

**Regions' Acquisition of AmSouth**

104.   Meanwhile, by February 2006, Moore and Ritter, who had known each other for several years, began seriously discussing a strategic merger of the two companies.  By May 2006, after consulting with the Regions Board, Moore retained Merrill Lynch as Regions' outside financial advisor concerning a proposed combination with AmSouth.  On May 17, 2006, Regions and AmSouth entered into a confidentiality agreement and commenced mutual due diligence.  Within five days, Moore and Ritter had agreed in principle to an all-stock transaction in which AmSouth would merge into Regions, with Regions being the surviving corporation,

- 62 -

and having a fixed exchange ratio of 0.7974 shares of Regions common stock for each share of AmSouth common stock. At a May 24th Regions Board meeting, Moore reported on Regions' due diligence investigations of AmSouth, Merrill Lynch explained the proposed structure and other financial terms of the Acquisition and provided an oral opinion (subsequently confirmed in writing) that, as of the date of its opinion, the exchange ratio in the merger was fair, from a financial point of view, to Regions, and the Regions Board voted unanimously to approve the Acquisition of AmSouth. The AmSouth Board met that same day and approved the Acquisition as well. The transaction was announced on the morning of May 25, 2006 in a press release issued jointly by Regions and AmSouth.

105.    On August 17, 2006 Regions and AmSouth jointly issued a final Proxy Statement to Regions' and AmSouth's shareholders recommending that they approve the Acquisition at concomitant shareholder meetings to be held on October 3, 2006.

106.    Concerning the "Accounting Treatment" of the Acquisition, the Proxy Statement explained,

> The merger will be accounted for as a "purchase" by Regions of AmSouth, as that term is used under U.S. Generally Accepted Accounting Principles, which we refer to as GAAP, for accounting and financial reporting purposes. As a result, the historical financial statements of Regions will continue to be the historical financial statements of Regions following the completion of the merger. The assets (including identifiable intangible assets) and liabilities (including executory contracts and other commitments) of AmSouth as of the

- 63 -

effective time of the merger will be recorded at their respective fair values and added to those of Regions. ***Any excess of purchase price over the net fair values of AmSouth assets and liabilities is recorded as goodwill (excess purchase price).***

[Emphasis added.]

107.   The Notes To Unaudited Pro Forma Condensed Combined Consolidated Financial Statements in the Proxy Statement indicated that the combined value of the Regions' stock being paid as acquisition currency and the estimated fair value of AmSouth stock options being assumed resulted in a total ***purchase price of $9.7455*** million for AmSouth and that that the "[e]xcess of purchase price over carrying value of net assets acquired" (or ***"goodwill") was $6.4607 million, or over 66% of the total purchase price.***

108.   On October 3, 2006, both companies' shareholders approved the Acquisition and the Acquisition was completed on November 4, 2006.

**The False and Misleading Merger Proxy Statement**

109.   In connection with the Acquisition, the Individual Defendants and Merrill Lynch, for the purpose and with the effect of effecting the highly-dilutive AmSouth Acquisition, disseminated to shareholders and filed with the SEC a Proxy Statement (last updated August 17, 2006) that falsely reported the value being attributed to AmSouth in the Acquisition, the fairness of the exchange ratio of shares being paid to acquire AmSouth in the Acquisition, and the combined entity's *pro forma* balance sheet and income statement.  The Proxy Statements also referred

- 64 -

to the goodwill (excess purchase price) the combined entity would recognize post-Acquisition without stating the extent to which it would be immediately impaired upon consummation of the Acquisition.

110.   Specifically, as to AmSouth's pre-Acquisition Asset Quality Ratios, the Proxy Statement represented that:

| | At or for the Six Months Ended June 30, | | At or for the Year Ended December 31, | |
| | 2006 | 2005 | 2005 | 2004 |
| | | | (Dollars in thousands, except per share data) | |
| **Asset Quality Ratios:** | | | | |
| Allowance for loan and lease losses to loans, net of unearned income | 0.96% | 1.09% | 1.02% | 1.12% |
| Allowance for loan and lease losses to non-performing loans(2) | 378 | 519 | 356 | 414 |

111.   Statements concerning AmSouth's pre-Acquisition Asset Quality Ratios were false and misleading in that they concealed that AmSouth's loan/lease loss provisions were materially understated due to AmSouth's lack of experience lending and servicing its rapidly expanding portfolio of adjustable interest rate loans, in Florida and elsewhere, and its failure to take appropriate loan loss reserves based on reasonable expected losses in its loan portfolio.

112.   Concerning the *pro forma* consolidated balance sheet of the combined entity as of June 30, 2006, the Proxy Statement stated:

|  | As of June 30, 2006 (In thousands) |
|---|---|
| **Selected Statement of Financial Condition Data:** |  |
| Total assets | $ 142,437,065 |
| Securities available for sale | 16,908,586 |
| Securities held to maturity | 5,208,166 |
| Loans, net of unearned income | 93,002,169 |
| Deposits | 96,237,635 |
| Borrowed funds | 23,062,405 |
| Stockholders' equity | 20,443,785 |

113.   Statements concerning the combined entity's *pro forma* balance sheet as of June 30, 2006 were false and misleading in that they concealed that AmSouth's loan/lease loss provisions were materially understated due to AmSouth's lack of experience lending and servicing the portfolio of adjustable interest rate loans and failure to take appropriate loan loss reserves based on the actual expected losses in its loan portfolio, resulting in a material overstatement of the *pro forma* value of the combined entity's assets, loans and shareholder equity.

114.   Concerning the combined entity's *pro forma* income statement as of June 30, 2006, the Proxy Statement stated:

| | For the Six Months Ended June 30, 2006 | For the Twelve Months Ended December 31, 2005 |
|---|---|---|
| | (In thousands, except per share data) | |
| **Selected Statements of Income Data:** | | |
| Interest income | $ 3,883,608 | $ 6,765,262 |
| Interest expense | 1,637,099 | 2,504,339 |
| Net interest income | 2,246,509 | 4,260,923 |
| Provision for loan losses | 108,800 | 258,950 |
| Net income after provision for loan losses | 2,137,709 | 4,001,973 |
| Non-interest income | 1,411,892 | 2,728,612 |
| Non-interest expense | 2,234,939 | 4,499,624 |
| Income before income taxes | 1,314,662 | 2,230,961 |
| Income tax expense | 397,113 | 657,055 |
| Net income | $ 917,549 | $ 1,573,906 |

115.  Statements concerning the combined entity's *pro forma* income statements as of June 30, 2006 were false and misleading in that AmSouth's loan loss provisions were overstated, resulting in an overstatement of the *pro forma* interest income and the net income.

116.  Concerning the combined entity's *pro forma* Asset Quality Ratios, the Proxy Statement stated:

|  | For the Six Months Ended June 30, 2006 (Annualized) | For the Twelve Months Ended December 31, 2005 |
|---|---|---|
| **Selected Financial Ratios (1):** |  |  |
| Return on average assets(2) | 1.28% | 1.12% |
| Return on average stockholders' equity(3) | 9.00% | 7.73% |
| Return on average tangible stockholders' equity(4) | 21.27% | 18.17% |
| Ending stockholders' equity to total assets | 14.35% | N/A |
| Ending tangible stockholders' equity to total tangible assets | 5.79% | N/A |
| Efficiency ratio(5) | 61.10% | 64.25% |

117.  Statements concerning the combined entity's *pro forma* balance sheet were false and misleading in that they concealed that AmSouth's loan/lease loss provisions were materially understated due to AmSouth's lack of experience lending and servicing the portfolio of adjustable interest rate loans and failure to take appropriate loan loss reserves based on the reasonable expected losses in its loan portfolio, resulting in a material overstatement of the value of the combined entity's *pro forma* assets, loans and shareholder equity.

118.  Concerning AmSouth's annual financial report for FY 2005 and the interim financial reports for its first two quarters of FY 2006, the Proxy Statement