FILED

2009 Jul-01  PM 04:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

LOUISIANA MUNICIPAL POLICE
EMPLOYEES RETIREMENT SYSTEM,
Derivatively for the Benefit of, and on
Behalf of, Nominal Party, REGIONS
FINANCIAL CORPORATION,

_____PLAINTIFF,

vs.                                                     CASE NO. CV 09-J-1275-S

C. DOWD RITTER, et al.,

     DEFENDANTS,

and

REGIONS FINANCIAL CORPORATION,

     NOMINAL PARTY.

### MEMORANDUM OPINION

This case comes before the court on the defendants' joint notice of removal (doc. 1), filed June 25, 2009, to which the plaintiff filed a motion to remand and for expedited consideration of the motion (doc. 9), and a memorandum in support of said motion (doc. 10), on June 26, 2009.  The removing defendants filed a memorandum of law and evidence in opposition to the motion to remand (doc. 15) and defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), filed a response to the plaintiff's motion to remand (doc. 16).  Also pending before the court are the

following: motions for admission pro hac vice of Beth A. Kaswan (doc. 3), Joseph P. Guglielmo (doc. 4), and Mary K. Blasy (doc. 5), all filed on June 26, 2009; motions for admission pro hac vice of Stanley J. Parzen (doc. 17), John J. Tharp, Jr. (doc. 18), and Douglas W. Henkin (doc. 20), filed on July 1, 2009; defendants C. Dowd Ritter, O.B. Grayson Hall, Jr., William C. Wells, II, D. Bryan Jordan, Samuel W. Bartholomew, Jr., George W. Bryan, David J. Cooper, Earnest W. Deavenport, Jr., John R. Roberts, Lee J. Styslinger, III, and Regions Financial Corporation's motion to vacate temporary restraining order (doc. 7), motion for emergency stay pending hearing on the motion to vacate temporary restraining order (doc. 8), both filed June 26, 2009, and supplemental memorandum of law in support of motion to vacate temporary restraining order (doc. 19), filed July 1, 2009. Because the plaintiff's motion to remand is potentially dispositive of the remaining motions currently pending, the court considers the motion to remand first.

The defendants removed this action from the Circuit Court of Jefferson County, Alabama, asserting this court has jurisdiction under 28 U.S.C. § 1331. Notice of Removal, ¶ 4. Defendants assert that because the plaintiff's complaint alleges that the defendants have caused Regions Financial Corporation ("Regions") to file various Securities and Exchange Commission ("SEC") documents which are false and misleading, this court has jurisdiction. *Id*. The defendants also assert that

the plaintiff alleges that the defendants violated the Troubled Asset Recovery Program, 12 U.S.C. § 5201 ("TARP"), and the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7201, *et seq*., and seeks remedies under those federal laws. *Id.,* ¶ 5. Defendants further allege that the plaintiff's memorandum of law in support of the plaintiff's application for a temporary restraining order demonstrates that the plaintiff seeks to enforce Regions' rights pursuant to the TARP clawback provision. *Id.,* ¶ 6.  Thus, the defendants state this court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331. *Id.,* ¶ 8.

Through both its motion to remand and its opposition to defendants' motion to vacate the Temporary Restraining Order (doc. 11), the plaintiff asserts that the complaint raises solely state law claims and that TARP does not provide for any private cause of action. *See* plaintiff's memorandum in support of motion to remand (doc. 10) at 6, and plaintiff's opposition (doc. 11) at 4.

The complaint in this case asserts that the plaintiff has been a shareholder of Regions at all times relevant to the complaint. Complaint, ¶ 43. Regions is a Delaware corporation with its principal offices located in Birmingham, Alabama. Complaint, ¶ 44. The individual defendants are past or present officers or directors of Regions. Complaint, ¶¶ 45-72. Defendant Ernst & Young LLP ("E&Y") has

served Regions as an outside auditor and accountant.[1]  Complaint, ¶ 74.  Defendant

Merrill Lynch, headquartered in New York, served as a financial advisor to Regions

during the time period Regions acquired AmSouth Bank.  Complaint, ¶ 77.

The substantive allegations of the complaint assert that beginning in 2000,

AmSouth allowed a "Ponzi" scheme to be run using AmSouth custody accounts.

Complaint, ¶¶ 86-87.  The plaintiff relies on a newspaper article dated July 14, 2004,

for allegations of AmSouth's wrongdoing which resulted in AmSouth forfeiting funds

to the United States.[2]  Complaint, ¶¶ 90-91, 94.  The complaint details further actions

by AmSouth taken before its merger with Regions.  Complaint, ¶¶ 95-103.  According

to the complaint, the Regions-AmSouth merger was announced in a press release on

May 25, 2006.  Complaint, ¶ 104.  The plaintiff asserts that the August 17, 2006,

Proxy Statement filed with the SEC regarding this merger falsely reported the value

of the combined entity's assets, loans and shareholder equity.  Complaint, ¶¶ 109-118.

The plaintiff complains that after the merger, Regions issued further misleading and

false statements.  Complaint, ¶¶ 122-123.

---

[1]The plaintiff fails to allege any place of incorporation, headquarters, or residency for this
defendant.  The sole statement regarding this is that "E&Y-Birmingham is also housed in The
Regions-Harbert Plaza, Regions' 32-story headquarters previously known as AmSouth-Harbert
Plaza."  Complaint, ¶ 74.  The complaint also fails to explain any relationship between E&Y and
"E&Y-Birmingham."

[2]The court notes a substantive portion of the plaintiff's complaint is drawn from
newspaper articles and internet sites.

The plaintiff asserts that post-merger, Regions falsely reported its goodwill balance in its March 1, 2007, SEC Form 10-K filing for 2006.  Complaint, ¶ 124.  A similar statement was contained in the 10-Q filed May 7, 2007, for the first quarter of 2007, the 10-Q filed August 3, 2007, for the second quarter of 2007, and the 10-Q filed November 9, 2007, for the third quarter of 2007.  Complaint, ¶¶ 128-132, 134.  Then, at the beginning of 2008, due to the softening real estate market, Regions' losses escalated, but Regions continued to claim it had taken "appropriate steps to decrease its exposure to troubled mortgages," which the plaintiff terms a "partial disclosure" concerning the truth.  Complaint, ¶¶ 140-141.  Regions' 2007 year end SEC report continued to report that the goodwill balance was $11.5 billion and unimpaired.  Complaint, ¶ 144.

The plaintiff asserts that a prospectus filed with the SEC by Regions in April 2008 falsely stated assets and shareholders' equity.  Complaint, ¶ 149.  The plaintiff alleges that the resulting sale of 13.8 million shares based on that prospectus violated the 1933 Securities Act and thus exposed Regions to hundreds of millions of dollars in potential strict liability.[3]  Complaint ¶ 149.  The plaintiff states that the 10Qs filed

---

[3]The plaintiff does not state whether this would be strict liability claims, fines, or some other form of penalties.

by Regions for the first and second quarters of 2008 reported goodwill as unimpaired. Complaint, ¶¶ 150-152.

An October 22, 2008, press release disclosed Regions' intent to accept funds under the TARP bailout program.  Complaint, ¶ 155.  Regions third quarter 10Q continued to report goodwill as unimpaired.  Complaint, ¶ 157.  On January 20, 2009, Regions announced that it was reporting a $5.6 billion loss for the fourth quarter of 2008, driven largely by a $6 billion, non-cash charge for impairment of goodwill. Complaint, ¶ 161.  Plaintiff draws from this that previous statements regarding goodwill must have been materially false and misleading.  Complaint, ¶ 163.  The plaintiff concludes that

> The Individual Defendants' improper loan review process, reporting of inflated loan portfolio values and failure to maintain adequate loan-loss reserves had a material adverse effect on Regions' operating results.  By failing to report the true facts concerning Regions' loan portfolio, the financial statements the Individual Defendants and E&Y caused Regions to issue and file with the SEC during the relevant period failed to provide investors with basic information necessary to understand Regions' financial results and omitted material information, needlessly exposing Regions to hundreds of millions of dollars in potential civil fines, penalties and judgments from regulators and investors.
>
> The true facts, which were known by defendants but concealed from the investing public during the relevant period, and/or were omitted from the April 2008 Prospectus and the Merger Proxy, were as follows:
>
> > (a) AmSouth's decision to "double" its presence in the over-stimulated Florida real estate lending market and servicing adjustable rate mortgages and the fact that it was

keeping these loans on its own books rather than repackaging them and selling them to other investors, significantly increased the risk associated with the AmSouth assets and diminished AmSouth's (and then Regions') ability to accurately calculate adequate loan loss reserves;

(b) AmSouth failed to adequately reserve for mortgage-related exposure, causing its balance sheet and financial results to be artificially inflated;

(c)  The five days the Individual Defendants permitted Regions' executives and financial advisors to conduct due diligence on the AmSouth acquisition was woefully deficient, rendering the fairness opinion by Merrill Lynch false and misleading;

(d)  The $11+ billion in "goodwill" the Individual Defendants and E&Y had caused Regions to continue carrying on its books from the inception of the AmSouth Acquisition on November 4, 2008 was grossly impaired (including the over $6 billion worth attributable to the AmSouth Acquisition);

(e) The Individual Defendants and E&Y were failing to write down Regions' impaired goodwill post-Acquisition, causing the Company's balance sheet and financial results to be artificially inflated;

(f) The Individual Defendants and E&Y failed to cause Regions to accurately and timely identify over $1 billion in "problem" and "non-performing assets";

(g) The Individual Defendants and E&Y caused Regions to fail to accurately and timely increase its loan loss provision by at least $1 billion during the Relevant period or to raise its allowance for credit losses as prudent accounting would have required;

(h) The AmSouth integration was not proceeding successfully;

(i) The value of the funds managed by Regions' subsidiary Morgan Keegan were overstated due to being laden with undisclosed subprime investments and potential ARS liabilities, exposing Morgan Keegan – and Regions – to hundreds of millions of dollars in potential civil liability and an SEC enforcement action;

(j) The Individual Defendants were causing Regions to operate with woefully deficient internal controls, resulting in the company improperly reporting its loan loss reserves and goodwill; and

(k) The Individual Defendants were causing Regions' capital base to dwindle to the point that it was not able to withstand the significant deterioration in the real estate market and, as a result, Regions was forced to raise additional capital by seeking assistance from the U.S. Government.

Complaint, ¶¶ 168-169.

The plaintiff next complains that the individual defendants each had the ability to cause Regions to disclose that it overpaid for AmSouth, but failed to do so, and further that each of the defendants could have forced Regions to comply with TARP provisions, but failed to do so.  Complaint, ¶ 175(a).  The plaintiff asserts a variety of ways in which Regions has not complied with TARP requirements.  Complaint, ¶ 175(e) and (f).

Based on the foregoing, the plaintiff brings claims for breach of fiduciary duty against the individual defendants (Count One); gross mismanagement against the individual defendants (Count Two); waste of corporate assets (Count Three); breach of duty by Ernst & Young and aiding and abetting by Merrill Lynch (Count Four); and breach of duty, suppression, and aiding and abetting by Merrill Lynch (Count V).

In order for this court to exercise jurisdiction, this must be a case over "which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. The only possible basis for the court to have jurisdiction under 28 U.S.C. § 1331 is for some claim in the plaintiff's complaint to "aris[e] under the Constitution, laws, treaties of the United States." 28 U.S.C. § 1331.

Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S.Ct. 868, 85 L.Ed.2d 1214 (1941). All doubts about jurisdiction should be resolved in favor of remand to state court. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994). The burden of establishing federal jurisdiction is placed upon the party seeking removal. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Not every allegation of federal law is proof that federal question jurisdiction exists. *Gully v. First National Bank in Meridian*, 299 U.S. 109, 115, 57 S.Ct. 96, 81 L.Ed. 70

(1936).   Rather, federal jurisdiction is established through use of the well-pleaded

complaint rule.  *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct.

1542, 95 L.Ed.2d 55 (1987); *Franchise Tax Board v. Construction Laborers Vacation

Trust*, 463 U.S.1, 10-11, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).   Hence, the court

has considered whether the "well-pleaded complaint" before it establishes either that

federal law created the cause of action or that the plaintiff's right to relief necessarily

depends on resolution of a substantial question of federal law."  *Franchise Tax Bd.

of Calif. ,* 463 U.S. at 27-28, 103 S.Ct. at 2856.   In other words, federal jurisdiction

exists only when a federal question is presented on the face of the plaintiff's properly

pleaded complaint."  *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1090 (11th Cir.2002);

citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d

318 (1987).

Under the well-pleaded complaint rule, in order for a case to be removable, the

cause of action which makes the cause removable must be revealed "on the face" of

the complaint.  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99, 107 S.Ct. 2425,

96 L.Ed.2d 318 (1987).  The plaintiff is the master of the claim and he or she may

avoid federal jurisdiction by exclusive reliance on state law.  *Caterpiller,* 482 U.S.

at 392.  A suit arises under the Constitution and laws of the United States only when

the plaintiffs' statement of their own causes of action show that those claims are

based in those laws or the Constitution.  *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003).  "As a general rule ... a case will not be removable if the complaint does not affirmatively allege a federal claim." *Id.*  Removal jurisdiction may not be sustained simply because a plaintiff could have asserted a federal claim instead of or in addition to the state claim advanced.  *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 3233 n. 6, 92 L.Ed.2d 650 (1986). *See also Jairath v. Dyer*, 154 F.3d 1280, 1283 (11th Cir.1998) ("The instant case is closely analogous to *Merrell Dow.* There, the Supreme Court found no federal-question jurisdiction where a state law cause of action incorporated as an element proof of the violation of a federal duty ... but where there was no private cause of action with respect to the federal duty"); *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 818 (4th Cir.2004) ("Therefore, although Dixon's complaint does reference the First Amendment, none of its causes of action rely exclusively on a First Amendment violation to establish Coburg's liability [under state law]").  The Eleventh Circuit has expressed a clear preference for remand where federal jurisdiction is not absolutely clear.  *See e.g. Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994).

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S.Ct. 2363 (2005), the United States Supreme

Court established a new test for determining whether a state-law cause of action gives rise to federal jurisdiction: does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities [?]" *Id.*, at 314, 125 S.Ct. at 2368.  The court found the absence of a federal private right of action as evidence relevant to, but not dispositive of congressional intent concerning the proper balance between state and federal jurisdiction.  *Id*, at 318, 125 S.Ct. at 2370.  However, the following year, in *Empire Healthchoice Assurance, Inc. v. McVeigh*, the Supreme Court ruled that *Grable* did not apply to support federal jurisdiction in that case  because the dispute was between private parties, the federal issue was not dispositive of the case and the claim was "fact-bound and situation specific." *Id.*, 547 U.S. 677, 682-83, 126 S.Ct. 2121, 2127 (2006).  *Empire* further held that *Grable* "exemplifies" a slim category of cases, suggesting it should not apply every time a federal statute was mentioned in a state court complaint.  *Empire Healthchoice*, 547 U.S. at 701, 126 S.Ct. at 2137.  The Court confined *Grable's* application to situations where the meaning of the federal statute was actually in dispute and was the only issue contested.  *Grable,* 545 U.S. at 315, 125 S.Ct. 2368.

12

This court has thus weighed whether the facts before it are more in line with *Grable* or *Empire Healthchoice*.  In essence, the plaintiff alleges that it has been damaged by the management decisions that have been made by the defendant officers and directors, and that it believes the auditors and investment advisors were complicit in these decisions.  Considering the five counts of the plaintiff's complaint, the court is of the opinion that each of them are valid claims under Alabama law and do not depend on proof of violations of federal law.  As the court reads the complaint, the plaintiff offers numerous alleged violations of federal law in support of its claims of breach of fiduciary duty, gross mismanagement, corporate waste, and other breaches of duty.

The defendant must show that the plaintiff's complaint, as it existed at the time of removal, provides an adequate basis for the exercise of federal jurisdiction.  *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295 (11th Cir.2008).  The defendants assert that this court has original jurisdiction over the plaintiff's claims because the plaintiff alleges defendants' actions caused material misstatements in a variety of SEC filings.[4]  Notice of Removal, ¶ 4.  The defendants also rely on plaintiff's allegations of violations of TARP and the Sarbanes-Oxley Act and allege

---

[4]The defendants allege that the plaintiff pleads claims based on the same allegations against the same defendants in a case currently pending in the United States District Court for the Southern District of New York.  No citation, docket number or even case style of the New York litigation has been provided to this court.

that the plaintiff seeks remedies under those federal acts.  Notice of Removal, ¶ 5.

The defendants also assert that the plaintiff's filings in conjunction with the state

court issued TRO demonstrate that the plaintiff is proceeding based on violations of

federal law.  Notice of Removal, ¶ 6.

Although the complaint here alleges that the defendants have engaged in

violations of federal securities laws, the plaintiff asserts these actions are support for

its claims that the defendants have breached their fiduciary and other duties, engaged

in gross mismanagement, and engaged in corporate waste.  These are claims under

the laws of the State of Alabama.  Indeed, even had the plaintiff attempted to state a

cause of action under TARP or Sarbanes-Oxley, any such claim could not provide a

basis for federal jurisdiction because the same would fail to state a claim upon which

relief could be granted.  This court can find no evidence that Congress intended to

provide a private right of action under either statute.[5]  *See e.g., Rowley v. American*

*Home Assurance Company,* 2009 WL 700684 (E.D.La. 2009) (finding allegations

concerning TARP merely factually to support bad faith claim and that defendants

failed to identify provision of  TARP or Emergency Economic Stabilization Act of

---

[5]Because the court can find no Congressional intent that a private right of action was intended under TARP, the court finds the state court's granting of the TRO on these very grounds questionable, at best.  The court is also concerned at the granting of a TRO against unnamed and unidentified defendants.  However, because this court concludes it lacks any basis for exercising jurisdiction, this court is powerless to set aside the TRO entered by the state court.

2008 which conferred private right of action upon plaintiffs); *Bysis Group Inc. Derivative Action*, 396 F.Supp.2d 463, 464 (S.D.N.Y.2005)(holding in shareholder derivative action that "there is no private right of action under Section 304 of Sarbanes-Oxley..."); *Mehlenbacher v. Jitaru*, 2005 WL 4585859 (M.D.Fla.2005) (applying 11th Circuit law and finding no private right of action in shareholder derivative action to, *inter alia*, seek recoupment of bonus and other incentives paid to officers of corporation); *Kogan v. Robinson,* 432 F.Supp.2d 1075 (S.D.Calif.2006) (same).  While such a consideration is not dispositive under *Grable, supra*, it is evidence of congressional intent concerning the proper balance between state and federal jurisdiction. That intent weighs in favor of the state court's jurisdiction in the facts before the court.[6]

Having considered the defendants' claim that this action "arises under" federal law, the court finds that, under the facts of this case, the plaintiff's state law claims do not "really and substantially involve [] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Dunlap v. G &L Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir.2004); citing *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir.1982).  Although the plaintiff asserts that

---

[6]In other words, even assuming that the plaintiff sought relief under TARP and the Sarbanes-Oxley Act for the alleged violations thereof, this alone cannot create federal jurisdiction because such claims fail to allege a cause of action on which relief can be granted.

the defendants have engaged in violations of TARP, no cause of action in the complaint is brought under that federal statute.  *See e.g. Houston v. Seward & Kissel, LLP,* 2008 WL 818745 (S.D.N.Y.2008) (finding Congress expressly intended to preserve state's authority in realm of fraud and deceit in securities offerings); *Finance and Trading, Ltd. v. Thodia*, 2004 WL 2754862 (S.D.N.Y.2004) (holding that plaintiffs' state law fraud and negligent misrepresentation claims in a securities fraud case were not created by the Securities Exchange Act, and thus were not subject to exclusive federal jurisdiction, and holding plaintiffs' claims were not preempted by federal law).   The Eleventh Circuit recently noted that

> The dispute between the parties concerns the factual basis for the defendants' statements accusing the plaintiffs of violating federal law. Clear federal guidance exists on every question of federal law relevant to evaluating the falsity of those statements. "We are mindful that state courts are generally presumed competent to interpret and apply federal law." *Id*. at 560. While this case does raise an important federal issue, the federal issue in this case does not implicate in a significant way the concerns that supported the exercise of federal jurisdiction over the state-law claim in *Grable*. In other words, "[t]he pertinent finding, which leads to our present conclusion, is that the federal interest in this case is not 'substantial' as that term has been defined under the prevailing Supreme Court precedent." *Id.* at 572.

*Adventure Outdoors, Inc. v. Bloomberg,* 552 F.3d at 1301-1302.

Where, as here, there are no federal issues apparent from the face of the complaint, federal question jurisdiction may still lie where the plaintiff has engaged in "artful pleading."   The artful pleading doctrine carves out an exception to the

"well-pleaded complaint" rule and provides that a plaintiff cannot avoid federal jurisdiction by characterizing a federal claim as a state claim. *Firefighters Retirement System v. Regions Bank*, 598 F.Supp.2d 785 (M.D.La.2008).  Thus, even if the "well-pleaded complaint" does not set forth a federal claim, federal question jurisdiction may nevertheless exist in two situations: (1) when Congress completely preempts an area of state law and (2) when the state claim contains a "substantial and disputed federal issue."  *Grable*, 545 U.S. at 312.

The court has considered each of these possibilities, but finds neither of them applicable in the facts before it.  Here, the plaintiff's claims arise under Alabama law and are not preempted by federal securities law.  Nor do these claims contain a "substantial and disputed federal issue."   Rather, the plaintiff asserts that the defendants' alleged violations of federal law are evidence of their breaches of duty which arise under Alabama law.  Allegations in a complaint which "simply provide a factual basis for a claim and which could independently support either a state law claim or a federal law claim are generally not sufficient to create a substantial question of federal law or to confer jurisdiction to the federal courts. *Ekas v. Burris*, 2007 WL 4055630, 5 (S.D.Fla.2007) (citation omitted).  *See also Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1040-1041 (9th Cir.2003) ("While this kind of garrulity in pleading is flagrantly inconsistent with Rule 8, and may shock

environmentalists keen on saving trees, it does not of itself, turn a state law case into a federal case ... The appropriate punishment for bad pleading is the striking of surplusage, not removal to federal court where no remedy exists").

Again returning to the allegations of the complaint, the court considers what the plaintiff must prove for each of its claims.  Although allegations in the plaintiff's complaint may "show that very likely, in the course of litigation, a question under the Constitution would arise," removal is still inappropriate if the allegations "do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution." *Pearson v. Regions Bank,* 2009 WL 1328083, 1 (M.D.Ala.2009); citing *Franchise Tax Bd.*, 463 U.S. at 10 (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)).  As the court in *Pearson* noted, removal is inappropriate where "federal law becomes relevant only if [plaintiff] has made out a valid claim for relief under state law." *Id.*, *3.  Hence, should the plaintiff fail to establish that the defendants breached fiduciary duties, or engaged in gross mismanagement, then the alleged federal issues are moot.  *See also Ekas v. Burris*, 2007 WL 4055630 (S.D.Fla.2007) (holding that, in shareholder derivative action, to prove breach of fiduciary duty by showing false statements were made to the SEC, was "tangential to proving the breach..." and therefore did not create federal question sufficient for jurisdiction).

The court finds that the claims of the plaintiff's complaint do not provide a basis for federal question jurisdiction.   The court is of the opinion that any federal question which arguably may appear in plaintiff's complaint is insufficient to create jurisdiction in this court.  Therefore, the court shall **GRANT** the plaintiff's motion to remand (doc. 9) and shall remand this case to the Circuit Court of Jefferson County, Alabama, by separate order.

The pending motions for admission pro hac vice (docs. 3, 4, 5, 17, 18 and 20) shall be  **DENIED** as **MOOT.**

Defendant Regions' motion to vacate temporary restraining order (doc. 7), and motion for emergency stay pending hearing on the motion to vacate temporary restraining order (doc. 8) shall remain pending for consideration by the state court upon remand.

**DONE** and **ORDERED** this the 1st day of July, 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

19